THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CURTIS W. MITCHELL, Defendant-Appellant.

Fourth District    No. 12815

Opinion filed April 15, 1976.

Richard J. Wilson and Richard E. Cunningham, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (G. Michael Prall and Stephen M. Deitsch, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant was convicted of robbery. On appeal he raises three issues: (1) Whether the State proved beyond a reasonable doubt that defendant took property by threatening the imminent use of force; (2) Whether the

trial court allowed a minor child to testify without properly determining the child's competency; and (3) Whether the sentence is excessive. We affirm the judgment and sentence imposed.

Defendant's first contention requires that the evidence be reviewed. Michael Houston testified that he went to Ludwig's Market in Quincy, Illinois, with his younger brother Rick on January 16, 1973, at about 6:25 p.m. On that date Mike was 15, and Rick was 10 years old. Rick went in to buy some groceries. Mike remained outside. At about that time a 1960 Chevrolet station wagon pulled up to the store. Two persons went in while several others remained in the car. All the occupants were black. In response to a call from the car, Mike went over. A man inside asked him for some money to buy gas. Mike identified that man as defendant. Mike first said he did not have any money but finally gave him a quarter in the hope that the man would leave him alone. He testified he was a little bit scared by this conversation.

After this, Rick came out of the store with a bag of groceries. Mike said he had to go and moved off. Defendant got out of the car and followed the boys to a point 10 to 20 feet from the store entrance and about 15 feet from the station wagon. Defendant asked to see Mike's glasses. Mike refused to hand them over. Defendant asked for the glasses repeatedly and repeatedly Mike refused. At some point defendant said he wanted the glasses so that he could pawn them for gas money. Mike and Rick began backing up slightly during this conversation, at which point defendant said: "Don't run 'cause I'll get you." After more demands from defendant Mike finally handed over the glasses. He testified that he figured it was better to hand them over than to get hurt. Although defendant did not make any threatening gestures with his hands or body, Mike did not run because he was afraid that his little brother might then get hurt and he was afraid of defendant and the other men in the car. During the early part of this conversation, Bill Ludwig, a young man, had come out of the store to load groceries into a lady's car. At all times the defendant was between the brothers and the store entrance. Near the end of the conversation defendant's companions yelled repeatedly for defendant to "come on." After he had been given the glasses, defendant returned to the car without any attempt to return them and the car drove off. The boys walked the block and a half home where they reported the incident to their parents who called the police. Later that evening Mike went down to the police station where he identified his glasses.

Rick Houston also testified. He corroborated his brother's testimony.

"Little Bit" Smith testified that on the evening in question he was riding around with defendant and several others. He testified defendant called the boy over and asked for the loan of some money and the boy gave

defendant a quarter. According to Smith, this was a friendly transaction. He saw defendant get out and go talk to the two brothers for 10 to 15 minutes. He saw Mike hand over the glasses. Smith then heard defendant call about three times to the retreating brothers to attempt a return of the glasses. Smith never heard any threats. Defendant, who was 22 years old at the time of the trial, testified to the same story as Smith. He denied saying he wanted to pawn the glasses or that the kids shouldn't try to run or he would get them. He testified he merely wanted to look through the lenses. There was other testimony by the defendant and by an officer in rebuttal concerning a statement given to the police after defendant's arrest in which defendant had said he had been at the Social Center during the time in question and had bought the glasses from a person he knew only as "Jim."

■■ Under section 18—1 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, §18—1), "[a] person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." The question presented here is whether the State proved that this taking was accomplished by threatening the imminent use of force.

> "The requirement that the taking must be 'by the use of force or threatening the imminent use of force' is satisfied if the fear of the alleged victim was of such nature as in reason and common experience is likely to induce a person to part with his property for the sake of his person." *People v. Whitley*, 18 Ill. App. 3d 995, 999, 311 N.E.2d 282, 286.

■■ Both boys testified that defendant made no threatening gestures. However, Mike refused to part with his glasses until defendant had said, "Don't try to run 'cause I'll get you." Under the circumstances presented here, this threat is sufficient to sustain a finding that the free exercise of the witness's will had been suspended. Mike testified that he was afraid, that he had to consider not only his safety and ability to remain free from harm but also the safety of his 10-year-old brother. Defendant was a grown man who was near several of his friends. Defendant's position also cut the brothers off from easy access to the store and the people in it. A victim is not required to find out exactly how dangerous his assailant could be. As the trial judge remarked, the question is not whether the boys should or shouldn't have run. The question is whether Mike parted with his glasses because of a reasonable fear on his part that the consequences of further refusal would be the use of force against himself or his brother.

Although no Illinois cases present exactly the same factual situation, the *Whitley* case shows facts analogous to those here. There, the victim observed the two defendants looking into his apartment through a hole

made by their removal of a ventilator cover. One defendant said that either the victim would open the door or they would break in. The victim opened the door. After they had gone the victim discovered $65 missing. The court had before it the same question present here, namely whether the taking had been accomplished by the use of the threat of force. The court stated:

> "Apart from the victim's testimony that he was 'scared,' the fact that complainant complied with the assailants' demands is itself indicative of fear when coupled with the words used by the assailants which were obviously calculated to effect that result. Under these facts, the verbal threat made by defendants was sufficient to sustain a finding that the free exercise of complainant's will had been suspended." *People v. Whitley*, 18 Ill. App. 3d 995, 999, 311 N.E.2d 282, 286.

Defendant argues that the testimony of Mike and Rick was not of a clear and convincing nature. The mere fact that the defense witnesses told a different story than the complaining witness and his brother does not raise a reasonable doubt. This is purely a question of credibility. The credibility and weight to be given to the witnesses' testimony is a matter for the trial court and will not be disturbed unless palpably erroneous. *People v. Arndt*, 50 Ill. 2d 390, 280 N.E.2d 230.

The defendant points to facts which, he says, impair the credibility of the boys' testimony. One of these is that the boys did not seek the help of Bill Ludwig who was loading groceries into a car. However, Ludwig was outside the store only during the early part of the conversation and not, apparently, outside after the threat had been uttered. In addition, defendant was between the boys and Ludwig.

The defense also presented the testimony of Henry Pollock, defendant's lawyer at the preliminary hearing. Pollock testified Mike had indicated at the preliminary hearing that he had not been threatened. Mike did not remember what questions were asked at the preliminary hearing. A copy of the transcript of the preliminary hearing was not available. Even if a prior inconsistent statement has been made, this would affect only the weight to be afforded the testimony and that weight is a matter for the trier of fact.

Defendant's own story is somewhat incredible. He said he merely wanted to borrow some money and look through the glasses. He admitted he had never requested such things from strangers before and that Mike was a stranger. He was corroborated only by Smith, who not only was a convicted burglar but also a good friend and workmate of defendant's.

Defendant brings up several other points of inconsistency. However, all of them would go only to the credibility of the witnesses and fall short of the kind of incredible testimony which would be necessary for this court

to find that the trial court, who heard and saw the witnesses, was palpably erroneous in his judgment. See *People v. Patterson*, 52 Ill. 2d 421, 288 N.E.2d 403.

The second issue is whether the trial court properly determined the competency of 10-year-old Rick Houston to testify.

■■ A preliminary examination was conducted by the State's Attorney on the question of Rick's competency. Trial counsel did not object to the fact that the prosecutor, rather than the judge posed the actual questions. Accordingly, that particular point is waived. *People v. Merrill*, 76 Ill. App. 2d 82, 221 N.E.2d 145.

■■ ■ The trial court must be satisfied that a witness is sufficiently mature (1) to receive correct impressions by his senses, (2) to recollect these impressions, (3) to understand questions and narrate answers intelligently, and (4) to appreciate the moral duty to tell the truth. (*People v. Sims*, 113 Ill. App. 2d 58, 251 N.E.2d 795.) Degree of intelligence, not age, determines whether a child is competent to testify. (*People v. Ballinger*, 36 Ill. 2d 620, 225 N.E.2d 10.) The decision of the trial court that a witness is competent will be reversed only where there has been an abuse of discretion. (*Ballinger*.) There was no abuse in the case at bar. Rick knew his age, his address, his grade in school and said he was a B student. He realized that the purpose of taking the oath was to tell the truth, that he would not lie but try to tell what he remembered. After the questioning, defense counsel objected on the ground that it was not shown that Rick could recollect facts accurately. The trial court overruled the objection but said wide latitude would be given in cross-examination. An extensive cross-examination was conducted. Rick's testimony was consistent and detailed.

Defendant cites *People v. Armstrong*, 127 Ill. App. 2d 377, 262 N.E.2d 271. We find that case to be distinguishable. *Armstrong* involved a conviction for rape. The only witnesses were the prosecutrix and her daughter who was less than 7½ years at the time of the incident and 8 at the time of trial. No preliminary examination was conducted. The court found that it was error not to conduct a preliminary examination into competency under these circumstances. In the case at bar, an examination was conducted. In addition, the child in *Armstrong* testified that the State's Attorney told her what to say, at least in part. In the case here, Rick denied that the State's Attorney or his parents told him what to say.

The trial court, who is in a much better position than this court to examine such questions, had a wide degree of discretion. No evidence of abuse is present.

Defendant's last argument is that his sentence of 3 to 12 years is excessive. Robbery is a Class 2 felony with a sentencing range of 1 to 20

years. (Ill. Rev. Stat. 1973, ch. 38, §18—1; §1005—8—1.) The defendant contends that the trial court improperly considered arrests not resulting in convictions in imposing the sentences. The arrests were noted in the presentence investigation report and defendant was afforded, and did, take advantage of the sentencing hearing to correct erroneous information.

■■ Pending charges and prior arrests may be considered upon the issue of probation (*People v. Taylor*, 13 Ill. App. 3d 974, 301 N.E.2d 319), although they cannot be considered in aggravation of a sentence of imprisonment. The trial court specifically stated that he did not consider arrests without convictions in imposing the sentence and considered the evidence that defendant had recently escaped from the county jail only as it reflected defendant's attitude towards discipline. It was proper to consider defendant's conduct in jail as it bears upon his rehabilitative potential. (*People v. Whitley*, 26 Ill. App. 3d 212, 324 N.E.2d 665.) Contrary to defendant's assertion, there is no evidence to show his sentence was affected by the trial court's consideration of inadmissible evidence. Even in the absence of the court's specific disavowal, this court would presume that the trial court disregarded any incompetent evidence. *People v. Flynn*, 23 Ill. App. 3d 730, 320 N.E.2d 138.

■■ This was no perfunctory sentencing hearing. The trial court found that a higher than minimum sentence was needed in order to provide counseling and vocational training which could not be accomplished with a minimum sentence. The trial court is in the best position to make such judgments.

Accordingly, the judgment of the circuit court of Adams County is affirmed.

Judgment affirmed.

TRAPP, P. J., and GREEN, J., concur.