THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DELMA MOFFETT *et al.*, Defendants-Appellants.

Third District   No. 76-332

Opinion filed December 30, 1977.

Robert Agostinelli and Verlin R. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellants.

Edward Petka, State's Attorney, of Joliet (James E. Hinterlong, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

After a jury trial in the Circuit Court of Will County, defendants Delma (Dale) Moffett and William Crisp were convicted of armed robbery and sentenced to respective terms of 6 to 12 and 7 to 14 years in the penitentiary. The first trial on the charges began on April 5, 1976, and ended April 8, 1976. The trial court declared a mistrial since the jury was unable to reach a verdict. The second trial began on April 22, 1976. The

only issue raised on appeal is whether the trial court's imposition of greater than minimum sentences was based on improper sentencing considerations.

Under the Unified Code of Corrections, the minimum term for a Class 1 felony such as armed robbery, shall be four years "unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term." (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(c)(2).) In the case at bar each defendant claims that his enhanced sentence was not based on the circumstances of the offense, nor on his personal history and character, but rather, on the fact the defendants maintained their innocence after the jury returned its guilty verdict. In addition, defendant Moffett contends his sentence was improperly based on testimony that he had threatened the Assistant State's Attorney who prosecuted the case. This court is asked to reduce the sentences imposed or vacate the sentences and remand the cause for a new sentencing hearing.

Testimony adduced at trial established the circumstances of the robbery to be as follows: Defendants entered Grubens, a Joliet tavern, about 9:30 p.m. on September 15, 1975, under the guise of intending to play pool. A tall, slender, black man, later identified as Moffett, asked the bartender whether he and his companion, a short, stocky, white man carrying a pool cue case and later identified as Crisp, could play pool.

After receiving permission, the two men started to play pool at the brightly lit table at one end of the tavern. After watching the game for some time and after noting that neither of the men took the supposed cue stick from its case, the bartender sent Goff, one of three customers, across the street to a fire station to call the police. Shortly thereafter, the black man drew a handgun and announced a robbery. The white man covered the bartender with what appeared to be a gun barrel protruding from his pool cue case. The robbers took several hundred dollars from the tavern's cash register and a small amount of cash from one of the patrons. Two firemen at the fire station saw the white man leave the tavern. He was soon apprehended by police who were waiting in squad cars nearby.

Both defendants entered pleas of not guilty and maintained their innocence throughout trial. Their testimony at trial affirmed they were together from about 3:30 p.m. to about 8:20 p.m. on September 15, 1975, when they left defendant Moffett's apartment to go for a ride in defendant Crisp's car. They separated later and Crisp admitted that he was in Gruben's tavern when the robbery occurred, but contended he was with a fellow named Joe who was a "dead ringer" for Moffett. He claimed he participated in the offense solely because he was compelled to do so by Joe. After the jury's guilty verdict was returned, a sentencing hearing was held and presentence reports received. The presentence report compiled

on defendant Moffett revealed that he was 21 years old and had one previous conviction for unlawful use of weapons. Defendant Moffett's employment record, consisting of numerous jobs, indicated that he had been incapable of continued employment. Defendant Crisp's presentence report noted that he was 32 years old and had prior convictions for unlawful use of weapons, assault, disorderly conduct, a number of traffic offenses and a juvenile commitment for burglary. The court noted that defendant Crisp had been confined three times for his conduct and that he had apparently not taken advantage of the opportunities he received in 1972 when he was placed on probation. The Assistant State's Attorney who prosecuted the case testified in aggravation that defendant Moffett had threatened him at the conclusion of the trial. Defendant Moffett allegedly told the State's Attorney that he would remember him and would "get him" when he got out of prison. Moffett took the stand and denied making any threat to the prosecutor. Defense counsel also testified that he had not heard Moffett make the alleged threat. In his comments before imposing sentence, the trial court noted the absence of remorse in defendant Moffett. The court further commented that it would take cognizance of the fact "that for whatever reason the defendants still persist in their innocence."

■■ The defendants contend that their sentences are excessive and were imposed because they would not admit their guilt. We find no validity in the defendants' contention that they were punished for refusing to admit their guilt. The present case is unlike *People v. Sherman* (3d Dist. 1977), 52 Ill. App. 3d 857, 368 N.E.2d 205, where the trial court told the accused, "the one thing that I can say about Mr. Williams [a co-defendant] is that he admitted his guilt to the probation officer," and then again referred to Williams' admission of guilt as an "indication that perhaps he [Williams] is taking the first step toward rehabilitation." The trial court here neither asked defendants to admit their guilt nor offered them a lesser sentence if they did. The implication of better treatment on sentencing found in *Sherman* is not present here.

We are well aware of our limited role in reviewing the appropriateness of sentences. It is not our function to serve as a sentencing court, and we will not substitute our judgment for that of the trial court merely because we feel that we would have imposed a different sentence had that function been delegated to us. Absent an abuse of discretion by the trial court, a sentence may not be altered upon review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Although defendants claim in their reply brief that *Sherman* is the first case on the issue in question, we believe this issue was considered fully by our supreme court in *People v. Sivels* (1975), 60 Ill. 2d 102, 324 N.E.2d 422, where the defendant, following a bench trial, was convicted of

voluntary manslaughter and aggravated battery and was sentenced to 1½ to 4½ years. After presentation of evidence had been completed, the able and experienced trial judge remarked that had defendant pleaded guilty, he probably would have given him probation with work release. This was because the judge regarded a plea of guilty as a sign of repentance and the first step toward rehabilitation. The defendant's contentions in that case were that he was denied probation because he had not pleaded guilty and also that he was punished for exercising his constitutional right to a jury trial. The supreme court discussed the A.B.A. Project on Minimum Standards for Criminal Justice (Standards Relating to Pleas of Guilty §1.8) and concluded:

> "Considering the whole record it cannot be said that the sentences of 1½ to 4½ years for manslaughter and aggravated battery were imposed as a punishment for the defendant's having asked for trial by jury or having chosen not to plead guilty." 60 Ill. 2d 102, 106.

■■ After reviewing the entire record we find the trial judge in this case, having presided over the trial not once but twice, was presented with at least three eyewitnesses who observed both defendants for several minutes and at close range. Their identification was positive, credible and unshaken on cross-examination. We believe the defendants had a fair trial and were proved guilty beyond a reasonable doubt.

Similarly, defendant Moffett's contention that the court abused its discretion in imposing an enhanced penalty because he had threatened the Assistant State's Attorney shortly after the guilty verdict had been returned is without merit.

■■■ Under the Unified Code of Corrections a sentencing judge must consider the history and character of the defendant before fixing the minimum term of imprisonment for any amount of time greater than the shortest term allowed. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(c).) The history and character of a defendant up to the time of sentencing are relevant to the court's evaluation of the defendant's potential for rehabilitation. (*People v. Tatum* (1975), 29 Ill. App. 3d 251, 330 N.E.2d 281. See *People v. Perry* (1st Dist. 1976), 38 Ill. App. 3d 81, 347 N.E.2d 340, and *People v. Mitchell* (4th Dist. 1976), 37 Ill. App. 3d 372, 346 N.E.2d 63.) Our review of the record leads us to conclude that defendant's sentence was not enhanced as punishment for a crime of which defendant was not convicted. In *People v. Girard* (3d Dist. 1977), 48 Ill. App. 3d 1, 3, 362 N.E.2d 472, this court said in a somewhat similar case and issue:

> "The record indicates that the trial judge considered the factors required by section 5—6—1 of the Unified Code of Corrections (Ill. Rev. Stat., 1975, ch. 38, par. 1005—6—1) before imposing

sentence. The trial judge's comments concerning defendant's failure to acknowledge his guilt were directly related to two of these factors: his need for correctional treatment and the seriousness of his criminal conduct."

We believe that the trial court properly considered the testimony and that it was material and relevant to assist the court in its inquiry into the general moral character of the defendant, his demeanor and natural inclination or aversion to commit crime, and his abnormal or subnormal tendencies.

The sentences were within legal limits, and we cannot say that the circuit court abused its considerable discretion in sentencing.

Accordingly, the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

STOUDER and SCOTT, JJ., concur.