THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LAWRENCE MOODY, Defendant-Appellant.

Third District   No. 78-54

Opinion filed December 21, 1978.—Rehearing denied January 23, 1979.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for
appellant.

Edward Petka, State's Attorney, of Joliet (James E. Hinterlong, of State's
Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant Lawrence Moody and a codefendant, Jane Perna, were
charged by information in the Circuit Court of Will County with the
offense of burglary. Defendant and Perna were tried together in one
proceeding, defendant's cause being before a jury, while Perna's cause
was before the court alone. Defendant was convicted of the offense
charged and sentenced to two to six years in prison.

The evidence at trial was clearly sufficient to prove both defendant
and Perna guilty of burglary beyond a reasonable doubt. Larry and Lorna
Schultz, the owners of the burglarized premises in Plainfield, testified that
as they were returning from a neighbor's home on December 22, 1976,
they saw two people coming out of their house, and both positively
identified defendant as one of those people. They also testified that upon

examining their home, they found that a TV set and three guns with cases were missing. Deputy Sheriff James Fetzner stated that at approximately 4:30 in the afternoon of December 22, 1976, he stopped a vehicle matching the description of the one used in the burglary. Defendant was driving the auto, and Perna was a passenger. A TV set and several gun cases discovered in the back seat were later identified as the ones taken from the Schultz home.

The only defense witness was Jane Perna who testified that on December 22, 1976, she was in Chicago at a methadone clinic where she met a man named Steve Anderson. According to Perna, Anderson asked her to give him a ride to his brother's house in Plainfield so that he could pick up some things. Perna agreed to the request and allowed Anderson to drive her auto to a house in Plainfield where he removed a TV set and several other items while she waited in the car. As they drove further toward Perna's home in Aurora they picked up a hitchhiker who turned out to be the defendant, a person Perna had known for three or four months. Shortly thereafter Anderson said his house was nearby and he left the auto on foot, leaving the TV set and other items in the back seat. Defendant and Perna continued toward Aurora until they were stopped by the deputy sheriff.

The court found Perna guilty and placed her in a drug rehabilitation program. The jury found defendant guilty and a sentencing hearing was held. Defendant requested probation, arguing that his criminal conduct was the result of his heroin addiction and presenting evidence that a drug rehabilitation program had agreed to accept him. The State requested a three- to nine-year sentence. The court rejected defendant's probation request and sentenced him to a term of two to six years in prison.

On appeal defendant does not challenge the jury's guilty verdict, but claims the court abused its discretion by denying him probation and imposing an excessive sentence based on improper sentencing considerations. Defendant directs our attention to that portion of the sentencing hearing wherein the trial judge stated:

"I don't think probation is appropriate in this case. This case was tried two months after—I think about two months after defendant was in custody, and he still had his co-defendant get up and almost jeopardize her chances of remaining in the drug program by having her tell a tale which was, I found, totally incredible."

According to defendant the preceding passage indicates the trial court improperly based its sentencing decision on its belief that defendant induced his codefendant, Jane Perna, to present fabricated testimony. Defendant urges us to vacate his sentence and remand the cause for a new sentencing hearing. We decline to do so.

The United States Supreme Court recently had occasion to consider

a very similar issue. In *United States v. Grayson* (1978), 438 U.S. 41, 57 L. Ed. 2d 582, 98 S. Ct. 2610, the court was called upon to decide whether it was proper for a judge to consider in imposing sentence his belief that the defendant gave false testimony at trial. The court noted the Federal sentencing statute (18 U.S.C. par. 3577 (1976)) which requires a Federal judge to consider the defendant's character and background in fixing sentence and stated:

" 'The effort to appraise "character" is, to be sure, a parlous one, and not necessarily an enterprise for which judges are notably equipped by prior training. Yet it is in our existing scheme of sentencing one clue to the rational exercise of discretion. If the notion of "repentance" is out of fashion today, the fact remains that a manipulative defiance of the law is not a cheerful datum for the prognosis a sentencing judge undertakes . . . . Impressions about an individual being sentenced—the likelihood that he will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, the degree to which he does or does not deem himself at war with his society—are, for better or worse, central factors to be appraised under our theory of "individualized" sentencing'." (*Grayson*, 438 U.S. 41, 51, 57 L. Ed. 2d 582, 590, 98 S. Ct. 2610, 2616.)

The court went on to conclude that a defendant's truthfulness or mendacity while testifying is probative of his character, his attitude toward society and his prospects for rehabilitation. The sentence imposed on *Grayson* was affirmed, the court holding that a rational exercise of sentencing discretion requires a trial judge to consider the defendant's whole person and personality as manifested by his conduct at trial and his testimony under oath.

We believe the reasoning employed in *Grayson* is pertinent to the case at bar. Our State's sentencing statute also requires a judge in imposing sentence to consider the history and character of the defendant. (Ill. Rev. Stat. 1977, ch. 38, pars. 1005—6—1, 1005—8—1.) We have held that in assessing a defendant's character and potential for rehabilitation a trial court is not limited to material contained in a presentence report, but may consider the defendant's character as demonstrated by his conduct during trial and up to the time sentence is actually imposed. (*People v. Moffett* (3d Dist. 1977), 55 Ill. App. 3d 939, 371 N.E.2d 364.) We have also held that when a defendant requests probation the court must be allowed to consider as broad a base of relevant information as possible, for in such cases the court assumes an awesome responsibility to the public to decide whether the defendant may be returned to the society which he has been found guilty of victimizing. (*People v. Kelly* (3d Dist. 1976), 36 Ill. App. 3d 476, 344 N.E.2d 50.) Furthermore, because of the trial judge's superior

opportunity to observe the defendant and assess his character, decisions regarding probation and sentencing have been confided to the trial court's sound discretion and are to be disturbed on review only if the record clearly indicates an abuse of that discretion. *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, 301 N.E.2d 300; *People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Considering our State's sentencing laws and the decisions of our courts in light of the *Grayson* case, we cannot say the trial judge in the instant case abused his considerable discretion by taking into account in imposing sentence defendant Moody's negative influence on codefendant Perna. The trial judge in the case at bar did not have an opportunity to observe defendant's "mendacity or truthfulness" while testifying because defendant did not take the stand in his own behalf. Apparently, however, the judge did have an opportunity to perceive defendant's influence on Perna who took the stand and told a story which both the judge and jury found unbelievable. A "manipulative defiance of the law" achieved by inducing a codefendant to give false testimony is no less relevant to a defendant's character and potential for rehabilitation than is the giving of false testimony by the defendant himself. Defendant requested probation entitling the court, in the interest of protecting the public, to consider as broad a range of information about defendant as possible. (*Kelly*.) We do not think the trial court abused its discretion in fixing defendant's sentence by considering his observation of defendant's conduct during the trial.

■■■ We have considered the recent decision in *People v. Cowherd* (4th Dist. 1978), 63 Ill. App. 3d 229, 380 N.E.2d 21, where the court declined to follow the *Grayson* decision. We believe *Cowherd* is distinguishable from the case before us because there the court found that aside from the perjury consideration, defendant's 10- to 30-year sentence was disparate in comparison with the shorter sentences given to his codefendants. No such factor is involved here. The sentence imposed on defendant in this case is more than justified by the nature and circumstances of the offense and the history and character of the defendant as evinced by his prior criminal record. The offense in question was a burglary of a home in which several guns were taken. The theft of weapons is a factor to be weighed heavily when a defendant requests probation and asks to be returned to society at large. Additionally this was not defendant's first offense nor his first request for probation. In January 1975, defendant was convicted of burglary and received two years probation. Less than one month later, in February 1975, defendant was charged with three counts of theft. He plead guilty and was sentenced to the Department of Corrections for eleven months. At time of trial on the instant offense there were forgery and misdemeanor charges pending against the defendant.

Defendant's past record does not augur well his prospects for leading a law-abiding life had he been granted probation.

■ In his probation request defendant emphasized his addiction to heroin and argued that his criminal conduct was the result of that addiction. He asked to be placed in a drug rehabilitation program. However, in his own statement to the court defendant admitted he had previously tried and failed in three other drug rehabilitation programs. This fact, combined with defendant's past criminal record and the nature of the present offense, indicates that defendant's potential for rehabilitation is minimal at best and is clearly outweighed by the public's justified interest in protecting itself from further criminal conduct by him. The two- to six-year sentence imposed is within statutory guidelines and is justified by the record in the case.

Defendant has cited for us two cases holding that it is improper to deny a defendant probation or increase a defendant's sentence based on misconduct of persons other than the defendant. (*People v. Barber* (2d Dist. 1974), 20 Ill. App. 3d 977, 313 N.E.2d 491; *People v. Carroll* (4th Dist. 1966), 76 Ill. App. 2d 9, 221 N.E.2d 528.) We agree with the principle enunciated in those cases, but find it inapplicable to the case at bar. The trial judge in the present case may have given consideration to his observation of misconduct by the defendant himself, but he did not deny defendant probation or increase defendant's sentence based on the misconduct of Jane Perna or any person other than the defendant. It was the influence of defendant on Perna which the court noted in its comments before passing sentence.

For the foregoing reasons the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

BARRY, P. J., and SCOTT, J., concur.