THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES CHARLES DANIS, a/k/a Randall Lee Langford, Defendant-Appellant.

Second District   No. 2—83—1135

Opinion filed December 28, 1984.

G. Joseph Weller and John R. Wimmer, both of State Appellate Defender's Office, of Elgin, for appellant.

Eugene L. Stockton, State's Attorney, of Dixon (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

A jury convicted the defendant, James Charles Danis, of the offense of forgery (Ill. Rev. Stat. 1983, ch. 38, par. 17—3(a)(1)), and he was sentenced to a five-year term of imprisonment. Defendant appeals, contending (1) that he was not proved guilty beyond a reasonable doubt, and (2) that the trial court erred in sentencing when it considered an improper aggravating factor and failed to consider a relevant factor in mitigation.

Ralph Berry, a truck driver for Southwest Freight Lines, testified at trial that he picked up a hitchhiker in Sioux City, Iowa, on January 27, 1983, and dropped him off two days later near Salina, Kansas. When Berry was asked whether the hitchhiker was present in court, the witness responded that he (the hitchhiker) was supposed to be there. Then Berry was questioned whether the defendant was the man he had picked up; he answered that the hitchhiker had a beard at the time. When the court inquired "[i]s that him without a beard?" Berry responded that he did not know. He added, however, that the hitchhiker had three fingers missing from a hand and that he could identify him by his hand. After the defendant displayed his hands, Berry stated, "That's his hand, but it don't look like him, but that's his hand." When the State's Attorney inquired how the defendant looked different from the hitchhiker, Berry answered that the person to whom he had given a ride had a beard and added that "[s]haven off they look different." He also stated that he had been with the hitchhiker for two days about eight months ago. Then the prosecutor asked Berry whether, based on his observation of the defendant's hand, he believed the defendant was the hitchhiker. Berry replied that he recognized "his hand right off the bat."

Berry testified further that he kept his checks in a box in the truck and that the hitchhiker had slept near it. A few weeks after Berry dropped off the hitchhiker, he received notification from a bank that a check of his that had been cashed was not made out in Berry's handwriting. After receiving this notice, Berry discovered that 25 to 30 of his checks were missing from the truck, including People's exhibit No. 1, which Berry testified he did not sign.

The witness stated, also, that he did not give anyone else a ride in the truck from the time he dropped off the hitchhiker in Salina until he received notification from the bank, and no one else had access to the checks. Berry did not give the defendant permission to take a check or sign it. At one point, however, the hitchhiker had asked Berry for his driver's license number, and Berry showed him the license.

During cross-examination, Berry stated he was sure the defendant was the man he had picked up in Sioux City and that he saw both of the hitchhiker's hands and noticed a deformity on only one hand. In addition, he testified that "[t]hat don't look like him, but how did he have my check book." Defendant exhibited his hands in trial and the record reflects that defendant has only three fingers on each hand as a result of a congenital defect.

Mary Nagy testified that on February 5, 1983, she was employed at Domino Liquors in Dixon. Late in the evening on that day, a man cashed a check for $150 and bought liquor. He made out the check in her presence, and she wrote in the payee for him. When the individual presented the check to her, she asked him for his driver's license; he replied that he did not have it, but that all the information was on the check. Nagy identified the defendant in open court as the person who cashed the check. She related, in addition, that she had seen the man before, because he had visited the store frequently over a three-week period. Nagy identified People's exhibit No. 1 as the check in question.

On cross-examination Nagy described the person who handed her the check as having black hair, a mustache and a full beard. She also remembered that one of his hands was deformed; she thought it was the right one. When she was asked whether she noticed the other hand, she responded that the other hand was okay. She was sure that he had one deformed hand and one normal hand.

Officer Robert Short stated that on October 21, 1983, he and Officer Bivens had a conversation with the defendant at the Dixon police department. The defendant told Short that he did not remember going into the liquor store or writing or cashing the check. Short related that he showed defendant a "forged document" and asked Danis if he had seen it before. The defendant did not recall whether he had seen the check previously, but remarked that, although he could not be sure, the signature on the check looked like his signature. The officer identified People's exhibit No. 1 as the check the liquor store handed over to the Dixon police department.

The defendant's first contention is that the eyewitness testimony the State adduced at trial identifying him as the perpetrator of the forgery offense was so doubtful and uncertain that it was insufficient to convict him beyond a reasonable doubt. He attacks the reliability of the testimony of Ralph Berry and Mary Nagy, emphasizing that they both testified that they saw both hands of the perpetrator and that he had only one deformed hand, whereas the evidence established that the defendant had two deformed hands. He concludes that this dis-

crepancy casts such a doubt upon the reliability of the witnesses' testimony that he was not proved guilty beyond a reasonable doubt.

Certain principles of law are well settled in the area of identification testimony. Although it is axiomatic that a conviction cannot be sustained if the identification of the accused was vague, doubtful or uncertain (*People v. Ash* (1984), 102 Ill. 2d 485, 494), it is equally well established that the identification testimony of a single witness is sufficient to support a conviction provided the witness is credible and viewed the accused under circumstances that would permit the making of a positive identification. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Gholston* (1984), 124 Ill. App. 3d 873, 892.) The standard for a positive identification is whether the witness was close enough to the accused for a sufficient length of time under conditions that provide an adequate opportunity for observation. (124 Ill. App. 3d 873, 892-93.) Discrepancies in the testimony or omissions of detail do not destroy the validity or credibility of an identification; rather, they affect the weight of the testimony and are evaluated by the trier of fact. *People v. Shelby* (1984), 123 Ill. App. 3d 153, 164.

A witness usually arrives at an identification based upon the total impression the individual made upon him, not by distinguishing separate features. (*People v. Shelby* (1984), 123 Ill. App. 3d 153, 165.) It is clear that where the in-court identification of the accused is positive, precise accuracy in describing facial characteristics, hair, height and weight is unnecessary. (*People v. Smith* (1977), 52 Ill. App. 3d 583, 587, *cert. denied* (1978), 436 U.S. 961, 57 L. Ed. 2d 1127, 98 S. Ct. 3079.) The question whether the identification is reliable is based upon an examination of the totality of the circumstances. (*People v. Bryant* (1984), 123 Ill. App. 3d 266, 272.) In addition, the fact that the witness had some prior acquaintance with the accused strengthens the reliability of the witness' identification testimony. (*People v. McClure* (1979), 80 Ill. App. 3d 10, 16.) The reliability of the identification is a factual matter for the jury's determination. *People v. Lutz* (1982), 103 Ill. App. 3d 976, 980.

The evidence presented in this cause reflects that Mary Nagy had occasion to view the defendant frequently during the three-week period he visited the liquor store as a customer. Subsequently, during the visit in question, she helped the defendant write the check upon which his conviction of forgery was predicated. She identified the defendant in open court as the person who cashed the check and described the man who handed her the check as having black hair, a mustache, and a full beard. She remembered, in addition, that one of his hands was

deformed, which she believed to be the right one. She stated, also, that she had observed the defendant's other hand and that it was normal. The defendant correctly observes that, as a result of a congenital defect, both of his hands possess only three fingers. It is also true that the defendant raised both hands in court in order that a witness (Berry) could observe them.

We consider that Nagy's identification testimony was positive and, standing alone, was sufficiently persuasive to establish beyond a reasonable doubt that the defendant was the person who committed the forgery. Her in-court identification testimony was not impeached, and, although the witness' reliability may have been cast into doubt somewhat due to her testimony that the defendant possessed one normal hand, the jury may have concluded that her failure to observe the deformity was not sufficient, by itself, to destroy the validity or credibility of her identification of the accused. (See *People v. Lumpkin* (1975), 28 Ill. App. 3d 710, 713-14 (the failure to observe a prominent facial scar did not cast into doubt the reliability of the witness' identification testimony).) It was within the jury's province to determine the weight to be accorded Nagy's testimony, especially where, as here, the jury viewed the defendant's hands in open court.

Although Berry's testimony was equivocal in that he first identified the defendant as the hitchhiker and then later, during cross-examination, stated that the defendant did not look like the hitchhiker, this witness did provide corroboration of Nagy's testimony. Berry identified the defendant based on his deformed right hand and stated that the hitchhiker had a beard. Nagy, too, testified that the person who cashed the check had a deformed right hand and a beard. Although it is true that Berry testified that the hitchhiker had only one deformed hand, the jury may have justifiably concluded that the witness' failure to observe the defect in the defendant's left hand did not fatally impair the reliability of other aspects of Berry's testimony.

There is also other evidence that tends to establish that the defendant was the same person who hitched a ride with Berry and cashed the check in Nagy's presence. Berry testified that the hitchhiker asked for his (Berry's) driver's license number and that he showed the hitchhiker the license. In addition, the record reflects that when Nagy asked the customer for his driver's license number, he replied that the information was on the check. The back of the check contains a truck number, a driver's number, and the notation South West Freight, the company for which Berry worked.

■ We conclude that the identification evidence produced established beyond a reasonable doubt that the defendant was the person

who committed the forgery. The identification of Danis is "not so dubious that any serious doubt of his guilt" exists. (*People v. Gholston* (1984), 124 Ill. App. 3d 873, 894.) The cases upon which the defendant relies (*People v. Ash* (1984), 102 Ill. 2d 485; *People v. Byas* (1983), 117 Ill. App. 3d 979; *People v. Carroll* (1970), 119 Ill. App. 2d 314; *People v. Barney* (1965), 60 Ill. App. 2d 79) are distinguishable factually from the present case.

■ Defendant contends next that the trial court committed prejudicial error in sentencing him and it must be vacated and the cause remanded for a new sentencing hearing. He argues that the trial court incorrectly considered as a factor in aggravation that the defendant, who had maintained his innocence at trial, had shown no remorse or penitent spirit. In addition, Danis argues that the trial court failed to consider as a relevant mitigating factor that the defendant had "led a law-abiding life for a substantial period of time before the commission of the present crime" (Ill. Rev. Stat. 1983, ch. 389, par. 1005—5—3.1(a)(7)).

Before imposing sentence, the trial court extended the defendant an opportunity to address the court, to which defendant responded that he had nothing to say. The court then remarked that, with respect to the seriousness of the crime, the present forgery caused harm to the defrauded person and observed that the defendant had not shown any remorse or a penitent spirit. The court noted, also, that the defendant's prior convictions were numerous and that the defendant's record of criminality was one of the worst that had ever been presented to it. Similarly, the court stated that the defendant began to get into trouble at age 16, had been in trouble ever since and had engaged in a constant series of crimes since age 16. The presentence report indicates that the defendant has an extensive criminal record spanning the years 1966 to 1983. Noting the defendant's extensive criminal history and the need to protect the interests of society against such criminal behavior, the court sentenced the defendant to a five-year term of incarceration.

Defendant asserts that the trial court may not consider as a proper factor in aggravation the fact that he did not express remorse at the sentencing hearing where defendant had maintained his innocence throughout the trial.

It is well settled that the question of the defendant's remorse or lack of it is a proper subject for consideration at sentencing, where, as happened here, the defendant maintained his innocence at trial. (See, *e.g.*, *People v. Albanese* (1984), 102 Ill. 2d 54, 80-81; *People v. Rodriguez* (1981), 100 Ill. App. 3d 244, 250; *People v. Costello* (1981),

95 Ill. App. 3d 680, 687-89.) The decision in *People v. Sherman* (1977), 52 Ill. App. 3d 857, upon which the defendant places primary reliance, was based upon unusual facts (*People v. Costello* (1981), 95 Ill. App. 3d 680, 688) and is distinguishable from the case at bar, for here, unlike in *Sherman*, there is no evidence that the defendant's punishment was increased because he did not admit his guilt. See *People v. Costello* (1981), 95 Ill. App. 3d 680, 688; *People v. Mosley* (1980), 87 Ill. App. 3d 903, 906; *People v. Moffett* (1977), 55 Ill. App. 3d 939, 941.

■ Defendant next contends that the trial court failed to consider as a factor in mitigation that he had led a law-abiding life for a substantial period of time prior to the commission of the present offense (see Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.1(a)(7)). In support, defendant points out that he led a law-abiding life for over four years prior to the present offense. The State responds, and the record establishes, that the defendant's prior record of criminality is extensive; he was convicted of numerous crimes between 1966 and 1978 and was also convicted of two offenses in 1983, excluding the current forgery conviction. Based upon his prior criminal record, the trial court may have concluded, with justification, that the four-year period during which the defendant led a crime-free existence was not "substantial" within the meaning of the statute and, thus, that the purported mitigating factor was not present here.

Even if defendant's limited period of law-abiding behavior were viewed as a mitigating factor, this alleged mitigating evidence was before the trial court, and we will assume that the trial court considered it unless there is some statement in the record, aside from the sentence imposed, which would tend to indicate otherwise. (*People v. Goodman* (1983), 116 Ill. App. 3d 125, 127-28; *People v. Baker* (1983), 114 Ill. App. 3d 803, 811.) This presumption applies in the present case.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOPF and STROUSE, JJ., concur.