THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIE BYRD, JR., Defendant-Appellant.

Fifth District   No. 5—84—0653

Opinion filed January 10, 1986.

JONES, J., dissenting.

Randy E. Blue and Patricia M. Sarter, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John R. Clemons, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Willie Byrd, Jr., was convicted, after a bench trial in the circuit court of Jackson County, of armed robbery. He was sentenced to 20 years' imprisonment.

On appeal defendant claims (1) the court erroneously admitted evi-

dence of statements defendant made to a police officer, (2) the uncorroborated testimony of an accomplice did not prove him guilty beyond a reasonable doubt, (3) the court erroneously admitted hearsay testimony of a police officer, and (4) his sentence was excessive. We affirm in part, vacate in part, and remand.

Defendant and the State stipulated that four witnesses, if called to testify, would state that an armed robbery was committed at Don's Jewelry Store in Carbondale at approximately 9:30 a.m. on July 1, 1983. These witnesses would have testified two men entered the store, one holding a gun, and that they took money and jewelry.

The State's primary witness was William Moore, who testified that he had already pleaded guilty and been sentenced to two concurrent 10-year sentences for two separate armed robberies, one being the robbery at the jewelry store. He stated that as part of the plea agreement, he was to testify against defendant, and to assist authorities in certain undercover drug investigations. Moore also testified that his family received $1,000 from the State to help them relocate so they could live near the prison where Moore was to serve his time.

Moore testified that on June 30, 1983, he went to the apartment where defendant was staying in Carbondale to ask defendant if he wanted to help commit a robbery. He stated that defendant agreed to drive the getaway car but not to participate more directly in the robbery. Moore and another man, Kerwin Jones, left Mount Vernon on the morning of July 1 and picked up defendant at the apartment between 9 and 9:30 a.m. It was not until this time that Moore informed defendant of where the robbery was to take place. According to Moore, the three proceeded to an area near the jewelry store. Moore and Jones got out of the car and walked to the store while defendant drove the car to a nearby alley where he parked. Moore, who was armed with a gun, and Jones committed the robbery, left the store and met defendant, who had driven from the alley into the street where he was waiting for them. Defendant drove them out of town to Mount Vernon, and after a few hours there, the three men went to Chicago. They returned to Mount Vernon late in the evening on July 2 after selling the jewelry in Chicago.

Further evidence for the State came from Detective Michael Dismore of the Carbondale police department. Detective Dismore testified that on July 6, 1983, he interviewed defendant while at the Murphysboro police department. Dismore stated that he advised defendant of his *Miranda* rights, and that defendant said he understood his rights but would not sign a waiver form. Detective Dismore testified, however, that defendant agreed to talk with him. Defendant

at first strongly denied any knowledge of the robbery. Dismore then told defendant Moore had implicated him in the crime. According to Dismore, defendant then said that on June 30 Moore had asked him if he knew a back way out of Carbondale and if he would drive the car. Defendant said he told Moore he knew a way out of town but refused to drive the car. However, defendant told Dismore that Moore and Jones came to the apartment on the morning of July 1, and that he knew they had committed an armed robbery and at that point he agreed to drive them out of Carbondale. Defendant told Dismore he drove to Mount Vernon and to Chicago. Dismore also testified that some time later, defendant asked him, "If I tell you how it really went down, what can you do for me?"

Defendant testified at trial that when Moore came to the apartment on June 30 to ask him if he would drive his car, he told him no. Defendant did admit giving Moore a route to get out of Carbondale. Defendant on direct examination stated that when Moore talked to him in the night before the robbery, he was not aware Moore was planning to commit an offense. Defendant testified also that Moore came back to the apartment around 10 a.m. on July 1, and asked defendant if he would drive the car using the route he had suggested the night before. Defendant testified that he refused to do so and Moore left. Defendant denied having told Dismore he had driven the car to Mount Vernon.

Defendant also presented two witnesses who testified he was at the apartment during the time in which the State alleges he was driving to Mount Vernon and Chicago.

■ Defendant first claims evidence of the statements he made to Detective Dismore should not have been admitted because there was no showing he knowingly and intelligently waived his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, at the time he made the statements. He relies on the fact he refused to sign a waiver of rights form before talking to Detective Dismore.

Defendant filed no motion to suppress the statements made to the police. He made no objection at trial to Detective Dismore's testimony attacking the voluntariness of the statements. Consequently, defendant has waived the issue of the voluntariness of his statements. *People v. Thomas* (1981), 98 Ill. App. 3d 852, 854, 424 N.E.2d 985, 988, cert. denied (1982), 456 U.S. 993, 73 L. Ed. 2d 1289, 102 S. Ct. 2276.

■ We next consider whether admission of the statements amounted to plain error. We note first that because defendant failed to put the voluntariness of the statements into issue at trial, we do

"not know what further evidence the State might have adduced if called upon to prove the voluntariness of defendant's statements." (*People v. Conley* (1983), 118 Ill. App. 3d 122, 131, 454 N.E.2d 1107, 1115.) However the record is sufficient here for us to conclude no plain error exists.

■ It is clear that waiver of one's constitutional rights under *Miranda* can be inferred from the actions and words of the accused and it need not be an express waiver. (See *People v. Smith* (1982), 93 Ill. 2d 179, 186, 422 N.E.2d 1325, 1328, *cert. denied* (1983), 461 U.S. 937, 77 L. Ed. 2d 312, 103 S. Ct. 2107, citing *North Carolina v. Butler* (1979), 441 U.S. 369, 373, 60 L. Ed. 2d 286, 292, 99 S. Ct. 1755, 1757.) The question of waiver is determined from the particular facts and circumstances of each case. 441 U.S. 369, 374-75, 60 L. Ed. 2d 286, 293, 99 S. Ct. 1755, 1758.

Defendant relies on *United States v. Heldt* (9th Cir. 1984), 745 F.2d 1275, where the defendant refused to sign a waiver of rights form but was still questioned. The court held that this at least created an ambiguous situation, and that in the face of such circumstances, the police "should clearly inform the accused that his failure to sign the waiver does not prevent statements he makes from being used against him." (745 F.2d 1275, 1278-79.) The court in *Heldt* found the statements made in that case inadmissible. However, the court relied on two circumstances not involved in the present case. The defendant in *Heldt*, in addition to refusing to sign the waiver form, initially indicated he did not want to answer any questions. Further, the court placed reliance on the fact that the defendant believed he would not be charged with any offense other than ones to which he had already pleaded guilty at the time he made the statements.

The court in *Heldt* did not state that there was a *per se* rule making inadmissible any statement made by an accused after refusing to sign a waiver form. In fact, the case of *United States v. Van Dusen* (1st Cir. 1970), 431 F.2d 1278, 1280, relied upon by the court in *Heldt*, clearly stated that it would "be folly to try to cast this principle in the form of a specific required practice. Indeed, were we so to rule, a suspect could, by refusing to sign and subsequently talking freely, enjoy the luxury of an immunity bath at no price at all."  .

In numerous other cases with similar circumstances, courts have refused to adopt a *per se* rule that when an accused refuses to sign a waiver form but still agrees to talk to the authorities, that the statements cannot be used at trial. In *People v. Thompson* (1984), 125 Ill. App. 3d 665, 681-82, 466 N.E.2d 380, 392-93, the defendant refused to sign a waiver form but agreed to talk to a detective. The appellate

court found the confession admissible. The *Thompson* decision shows the issue of waiver in such circumstances must be analyzed on a case by case basis. See also *North Carolina v. Butler* (1979), 441 U.S. 369, 60 L. Ed. 2d 286, 99 S. Ct. 1755; *People v. West* (1975), 25 Ill. App. 3d 827, 832, 322 N.E.2d 587, 591; *United States v. Boyce* (9th Cir. 1979), 594 F.2d 1246, 1250.

In the present case, defendant was advised of his *Miranda* rights and told police he understood them. He refused to sign the waiver form but agreed to talk to the officers. At trial, defendant admitted he was read his *Miranda* rights and that he agreed to talk to the officers. He specifically stated, "Yes. I told him that I would tell him what happened." At trial, defendant made no mention of his refusal to sign the waiver form and said nothing about any circumstances which might have rendered his statements involuntary. His testimony focused on what was said to the officers, and not the circumstances surrounding the making of the statements. Under these circumstances it would be anomalous to hold the statements were not made voluntarily and after a knowing and intelligent waiver of rights.

We must conclude that where a defendant fails to raise the voluntariness of a confession in a motion to suppress or by objection at trial, a police officer testifies that he was read his *Miranda* rights and said he understood them, defendant takes the stand and his only testimony regarding the circumstances surrounding the giving of his statement indicates it was voluntarily given and he had every opportunity at trial to allege his statement was not given voluntarily after a valid waiver of his rights, no plain error can be found.

Defendant makes the ancillary argument that he was denied effective assistance of counsel because his attorney failed to file a motion to suppress his statements and failed to object at trial. To prove ineffective assistance of counsel, defendant has to show there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061.) Here, defendant took the stand at trial and had every opportunity to describe why he thought the statements were given involuntarily. He did not do so. Rather, he freely admitted he agreed to talk to the police after hearing and understanding his *Miranda* rights. Defendant has failed to show how the result of his trial would have been different had counsel filed a motion to suppress or objected at trial.

Defendant next claims he was not proven guilty beyond a reasonable doubt because the only evidence of his guilt was the uncor-

roborated testimony of an accomplice. Our supreme court has stated that "the uncorroborated testimony of an accomplice is sufficient to sustain a conviction if such testimony convinces the jury of defendant's guilt beyond a reasonable doubt. [Citations.] We have emphasized, however, that accomplice testimony 'is fraught with serious weaknesses such as the promise of leniency or immunity and malice toward the accused' [citation], and should therefore be accepted only with utmost caution and suspicion and have the absolute conviction of its truth." *People v. Newell* (1984), 103 Ill. 2d 465, 469-70, 469 N.E.2d 1375, 1377.

Defendant points to two specific contradictions in the evidence. He first directs us to evidence that Moore, when first arrested, initially claimed to be someone else, namely his brother, and later after revealing his true identity, stated that his brother had committed the robbery. However, Moore abandoned these claims a few minutes later and confessed. Since that time he continued to admit his guilt. We do not think Moore's statements upon arrest briefly alleging his innocence make his testimony so improbable, unreasonable, or unsatisfactory as to raise a reasonable doubt as to defendant's guilt. (See *People v. Winfield* (1983), 113 Ill. App. 3d 818, 828-29, 447 N.E.2d 1029, 1039; *People v. Jeffrey* (1981), 94 Ill. App. 3d 455, 460, 418 N.E.2d 880, 885.) Defendant also points to Moore's testimony that he, Moore, had driven to Chicago with Jones and defendant after the robbery and that he told police this. Defendant notes that Detective Dismore testified Moore told him he had not gone to Chicago. This impeachment went to a collateral matter. The evidence was the three men stayed in Mount Vernon two hours after the robbery before anyone left for Chicago. Because this inconsistency goes to a minor collateral matter, it does not raise a reasonable doubt. (See *People v. Winfield* (1983), 113 Ill. App. 3d 818, 829-30, 447 N.E.2d 1029, 1039.) Additionally, there was corroborating evidence in the form of statements by defendant to police, as previously noted, to prove defendant's guilt beyond a reasonable doubt.

For his third issue defendant claims the court erred in the admission of testimony by police officer Frank Eovaldi. Officer Eovaldi testified he was present when defendant told Detective Dismore he had driven Moore and another man out of Carbondale. Defendant claims Officer Eovaldi was not testifying from his own recollection of what defendant said, but rather was testifying from a report prepared by Detective Dismore. Although there may have been some ambiguity in Officer Eovaldi's testimony as to whether he was testifying from his own recollection, any error in the admission of this allegedly hear-

say testimony was harmless because it merely corroborated that of Detective Dismore, and was thus cumulative of other properly admitted evidence. *In re R.D.* (1985), 131 Ill. App. 3d 612, 615, 476 N.E.2d 62, 65.

■ Defendant lastly attacks his 20-year sentence. He points to these comments made by the court during the sentencing hearing.

"I then turned to Mr. Byrd as an individual as Mr. Hamrock had suggested, which is what I would do had he not suggested it, and look at the statutory factors that the court must consider in sentencing anyone, both in mitigation and aggravation. I put Willie Byrd into the shoes of Mr. Moore and the other person that was involved in this and I find very little of a redeeming nature. Mr. Moore at least had the benefit of admitting his involvement, admitting his crime, the first step to redemption, perhaps. We have a continual denial here by Mr. Byrd of any involvement."

■ ■ A more severe sentence may not be imposed because a defendant refuses to abandon his claim of innocence (*People v. Speed* (1984), 129 Ill. App. 3d 348, 349, 472 N.E.2d 572, 573) or because he has exercised his constitutional right to trial (*People v. Bartlett* (1980), 91 Ill. App. 3d 138, 142, 414 N.E.2d 253, 257). In determining whether sentencing was improperly influenced by a defendant's failure to admit his guilt following a conviction, the court's focus upon whether the sentencing court indicated, either expressly or impliedly, that there would be better treatment on sentencing if the defendant abandoned his claim of innocence. (*People v. Speed* (1984), 129 Ill. App. 3d 348, 350, 472 N.E.2d 572, 574.) Here, the court specifically referred to defendant's continued denial of any involvement. Therefore, we must conclude that defendant's sentence was improperly influenced by his continuing denial of guilt. Defendant's sentence must be vacated and a new sentencing hearing must be held without consideration of his continuing denial of guilt.

We emphasize that we are vacating the sentence due to the court's statement regarding defendant's continual denial of guilt, and not due to defendant's other contention regarding his sentence. Defendant has claimed there was an unreasonable disparity between his sentence and that of Moore. He cites the rule that an arbitrary and unreasonable disparity between the sentences of codefendants who are similarly situated is impermissible. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 105, 458 N.E.2d 1370, 1375.) Defendant here was sentenced to 20 years' imprisonment, while Moore was sentenced to a 10-year term for this robbery, to run concurrently with a

10-year term he received for another armed robbery. Defendant argues the disparity is unwarranted because the evidence showed he only drove the getaway car, while Moore planned the robbery, recruited defendant to assist, and actually entered the store and committed the robbery. Further, defendant argues that he and Moore had roughly equivalent criminal records.

Defendant overlooks the fact Moore pleaded guilty to this robbery and agreed to testify against defendant as well as to assist authorities in undercover drug operations. "[I]t is proper for a trial court to grant leniency in sentencing a defendant who by his plea insured prompt and certain application of correctional measures to him, acknowledged his guilt and showed a willingness to assume responsibility for his conduct, and cooperated in the successful prosecution of other offenders." (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 105-06, 458 N.E.2d 1370, 1375.) Thus, we reject defendant's claim that his sentence was excessive because it was greater than that given to Moore.

For the foregoing reasons, the judgment of conviction of the circuit court of Jackson County is affirmed. The sentence is vacated and the cause remanded for a new sentencing hearing.

Affirmed in part, vacated in part, and remanded.

WELCH, J., concurs.

JUSTICE JONES, dissenting:

I concur with the majority in its affirmance of defendant's conviction, but I respectfully dissent from its action in remanding for a new sentencing hearing.

A fair reading of the remarks of the trial court at the time of pronouncing sentence, set forth by the majority, cannot lead to the conclusion that defendant was receiving a more severe sentence than his codefendant because he refused to admit guilt. Such a reading is overly broad and, in view of the result in many similar cases, unwarranted. The majority itself discusses the reason why defendant deserved and received a more severe sentence.

The trial court expressly noted that it was considering the statutory factors to be considered in sentencing, both in aggravation and mitigation. The reference to defendant's refusal to admit guilt was plainly made with regard to defendant's potential for rehabilitation and nothing more. There is nothing at all in the court's remarks to suggest that defendant was being punished for his refusal to admit guilt.

The court's remarks regarding defendant's refusal to admit guilt are well within the established rule that the court may consider the lack of a penitent spirit in determining an appropriate sentence because it is a factor that may have a bearing on the defendant's potential for rehabilitation. *People v. Danis* (1984), 129 Ill. App. 3d 664, 472 N.E.2d 1194; *People v. Speed* (1984), 129 Ill. App. 3d 348, 472 N.E.2d 572; *People v. Rodriquez* (1981), 100 Ill. App. 3d 244, 426 N.E.2d 586; *People v. Costello* (1981), 95 Ill. App. 3d 680, 420 N.E.2d 592; *People v. Mosley* (1980), 87 Ill. App. 3d 903, 409 N.E.2d 381; *People v. Porter* (1980), 83 Ill. App. 3d 720, 404 N.E.2d 337; *People v. Coleman* (1980), 83 Ill. App. 3d 429, 403 N.E.2d 1266. Also see *People v. Albanese* (1984), 102 Ill. 2d 54, 464 N.E.2d 206, and *People v. Sivels* (1975), 60 Ill. 2d 102, 324 N.E.2d 422.

I would affirm the case in its entirety.