THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRUCE CARLSON, Defendant-Appellant.

First District (3rd Division)    No. 1—96—0557

Opinion filed November 26, 1997.—Rehearing denied January 27, 1998.

Michael J. Pelletier and Pamela Z. O'Shea, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Celeste Stewart Stack, and John J. Rock, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Defendant, Bruce Carlson, was convicted in a jury trial of forgery and theft on January 10, 1996. On appeal of his conviction and sentence, defendant seeks reversal and remand for a new trial, a reduction of his sentence, or a remand for a new sentencing hearing on the grounds that: (1) defendant was not given a fitness hearing despite the fact that both the trial court and defense counsel knew that defendant was taking psychotropic medication before and during the trial; and (2) the trial judge's improper comments during the sentencing hearing in conjunction with an imposition of the maximum sentence allowable indicated that defendant was being punished for exercising his right to a jury trial and for refusing to admit guilt.

BACKGROUND

On January 10, 1996, a jury found defendant guilty of forgery and theft for forging signatures on a rental lease agreement and an unauthorized check for a security deposit and first month's rent. At a continuance held before trial, defense counsel informed the trial court that defendant was unable to appear in court due to an adverse reaction he had suffered from lithium. At an appeal bond hearing on January 26, 1996, defense counsel informed the trial court that defendant had been diagnosed as manic depressive and had been taking lithium. On February 9, 1996, defense counsel added to the presentence investigation report a letter from defendant's physician stating that defendant had been his medical psychiatric patient since April 3, 1993, and had been receiving 450 milligrams of lithium three times daily for his chronic manic depressive disorder. After defendant's motion for a new trial was denied, sentencing evidence was heard in aggravation and mitigation. Defendant gave a statement to the trial court during sentencing, in which he stated that, ever since he had been put on 1,350 milligrams of lithium per day in 1992, he had not engaged in any criminal behavior. The trial court sentenced defen-

dant to five years' imprisonment in the Illinois Department of Corrections.

ANALYSIS

I

■ Defendant first contends that he must be granted a new trial on the grounds that the trial court failed to conduct a fitness hearing to which defendant was entitled. Defendant bases this argument on the fact that he was receiving psychotropic drugs under medical direction before and during the trial.

It is well established that the due process clause of the fourteenth amendment prohibits the criminal prosecution of a person who is not competent to stand trial. U.S. Const., amend. XIV; see *Medina v. California*, 505 U.S. 437, 439, 120 L. Ed. 2d 353, 359, 112 S. Ct. 2572, 2574 (1992); *People v. Brandon*, 162 Ill. 2d 450, 455 (1994). To further ensure the protection of this right, Illinois courts have adopted the rule promulgated by the Supreme Court of the United States that a failure to observe procedures adequate to protect a defendant's right not to be tried while unfit deprives a defendant of due process. *Drope v. Missouri*, 420 U.S. 162, 172, 43 L. Ed. 2d 103, 113, 95 S. Ct. 896, 904 (1975); *People v. Nitz*, 173 Ill. 2d 151, 156 (1996), citing *People v. Murphy*, 72 Ill. 2d 421, 430 (1978); *People v. Ralon*, 211 Ill. App. 3d 927, 937, 570 N.E.2d 742, 749 (1991). The Illinois legislature has enacted several provisions in accordance with this general mandate for adequate procedural safeguards. Section 104—10 of the· Illinois Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/104—10 (West 1994)) provides that a "defendant is presumed to be fit to stand trial or to plead, and be sentenced." Section 104—11(a) states that the "issue of the defendant's fitness for trial, to plead, or to be sentenced may be raised by the defense, the State or the Court *** before, during, or after trial." 725 ILCS 5/104—11(a) (West 1994). That section also states that, "[w]hen a *bona fide* doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further." 725 ILCS 5/104—11(a) (West 1994). Of particular relevance in the instant case is section 104—21(a), which, at the time of defendant's trial and sentencing, provided in part that a "defendant who is receiving psychotropic drugs or other medications under medical direction is *entitled* to a hearing on the issue of his fitness while under medication." (Emphasis added.) 725 ILCS 5/104—21(a) (West 1994). We note that the amendment to section 104—21(a) (Pub. Act 89—428, art. 6, § 605, eff. December 13, 1995) in effect at the time of defendant's trial and sentencing was held by the Supreme

Court of Illinois to be unconstitutional and invalid for violating the "single subject rule" of article IV, section 8(d), of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)). *Johnson v. Edgar*, 176 Ill. 2d 499, 514-18 (1997). Consequently, we deem the excerpt from section 104—21(a) quoted above to have been the only valid version of that provision at the time of defendant's trial and sentencing.

Although the Code presumes that a defendant is fit to stand trial and requires that a *bona fide* doubt of competency exist in order to justify a fitness hearing, Illinois courts have consistently interpreted section 104—21(a) of the Code to mean that a defendant's receipt of psychotropic medication at or near the time of trial or sentencing in and of itself raises a *bona fide* doubt of the defendant's fitness and automatically triggers his or her right to a competency hearing. *People v. Birdsall*, 172 Ill. 2d 464, 475 (1996); *People v. Kinkead*, 168 Ill. 2d 394, 407 (1995); *People v. Gevas*, 166 Ill. 2d 461, 469 (1995); *People v. Brandon*, 162 Ill. 2d 450, 457 (1994). A defendant's right under section 104—21(a), therefore, must be enforced and is not a matter of the court's discretion. *Kinkead*, 168 Ill. 2d at 407; *Brandon*, 162 Ill. 2d at 460-61; *People v. Guttierez*, 271 Ill. App. 3d 301, 305, 648 N.E.2d 928, 931 (1995). Furthermore, even if neither party raises the issue of a defendant's competency at trial, the trial court has a duty to conduct a fitness hearing *sua sponte* once it has learned that the defendant has taken psychotropic drugs during or proximate to the proceedings or sentencing. *Kinkead*, 168 Ill. 2d at 411; *Gevas*, 166 Ill. 2d at 469; *Brandon*, 162 Ill. 2d at 456, 459; *Guttierez*, 271 Ill. App. 3d at 306, 648 N.E.2d at 932.

In the case *sub judice*, the trial court was informed on four separate occasions that defendant was taking psychotropic medication: at a pretrial continuance, at defendant's appeal bond hearing, in defendant's physician's letter attached to the presentencing investigation report, and in defendant's statement during the sentencing hearing. We believe that the foregoing facts were sufficient to put the trial court on notice of the issue of defendant's mental competency to stand trial and whether defendant was, therefore, entitled to a fitness hearing. We do not believe, however, that there is adequate evidence on record to verify defendant's assertion that he received psychotropic drugs during his trial and sentencing. That is, the record lacks reliable evidence showing that defendant's receipt of lithium occurred during or near the time of the proceedings, and the record fails to show in what manner the drug may have influenced defendant's mental faculties, temperament, and behavior in the courtroom. As our supreme court stated in *Kinkead*, "[f]urther inquiry into the specifics of defendant's drug usage at the time of his

sentencing would have provided the trial court with facts relevant to whether the court had a further duty, under section 104—21(a), to conduct a formal fitness hearing." *Kinkead*, 168 Ill. 2d at 415. Since this threshold question concerning the proximity of defendant's receipt of psychotropic drugs to the trial proceedings must be answered concretely before we can say that defendant was denied due process of law, we hold that a limited remand directing the trial court to make findings with respect to defendant's possible use of psychotropic medication during the critical stages of litigation is necessary. This conclusion accords with a number of cases in which the trial courts failed to conduct fitness hearings despite being put on notice of the defendants' use of psychotropic drugs, yet the records lacked sufficient evidence for, higher courts to definitively conclude that the defendants should have been given fitness hearings. See *Kinkead*, 168 Ill. 2d at 415-17; *People v. McKay*, 282 Ill. App. 3d 108, 114, 668 N.E.2d 580, 585 (1996); *People v. Johnson,* 276 Ill. App. 3d 656, 658, 659 N.E.2d 22, 24 (1995).

We do not believe, however, that the present case warrants automatic reversal upon the trial court's finding that defendant was receiving psychotropic drugs during the proceedings. Although Illinois courts have often refused to conduct retrospective fitness hearings (see, *e.g., People v. Nitz*, 173 Ill. 2d 151, 163-64 (1996); *People v. Birdsall*, 172 Ill. 2d 464, 476-80 (1996); *People v. Gevas*, 166 Ill. 2d 461, 471 (1995)), we believe that our supreme court's recent decision in *People v. Burgess*, 176 Ill. 2d 289, 303 (1997), supports our holding that a fitness hearing conducted *nunc pro tunc* is appropriate in the instant case. In *Burgess*, the court stated:

"[T]here will be some circumstances in which it can be said that the use of psychotropic medication did not affect the defendant's mental functioning in such a way that relief would be appropriate.` *** [W]e believe that, at least in the present case, there are sufficient reasons to depart from our previous practice of automatic reversal and to make a case-specific inquiry into the psychotropic drugs administered to this particular defendant.

*** [W]e should not automatically assume that every psychotropic drug will inevitably render the person taking it unfit for purposes of trial or sentencing, and we therefore conclude that retrospective hearings are sometimes proper." *Burgess*, 176 Ill. 2d at 303-04.

In conformity with *Burgess*, we further direct the trial court on remand to make a final determination as to defendant's fitness during his trial and sentencing based upon the evidence gathered with respect to defendant's asserted use of psychotropic drugs.

The State, nevertheless, contends that we should apply in our analysis the current amendment to section 104—21(a), which states: "A defendant who is receiving psychotropic drugs shall not be presumed to be unfit to stand trial solely by virtue of the receipt of those drugs or medications." Pub. Act 89—689, § 90, eff. December 31, 1996 (amending 725 ILCS 5/104—21(a) (West Supp. 1995)). By applying this amended version of the provision, the State argues that defendant must affirmatively make a showing that there was a *bona fide* doubt as to his fitness for trial in order to justify a remand or reversal, as the current law no longer presumes a lack of fitness merely from the receipt of psychotropic medication. The State bases its argument on the premise that procedural laws, like the statute in question, are generally applied retroactively in pending matters—an argument that the State claims is supported by *People v. Nitz*, 173 Ill. 2d 151 (1996), *Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210 (1994), and *People v. Bates*, 124 Ill. 2d 81 (1988). Specifically, the State relies upon the aforementioned cases for the proposition that, where the legislature amends a procedural law pending an appeal, the case must be resolved by the reviewing court under the law as it then exists, not as it existed when the lower court's decision was made. *Nitz*, 173 Ill. 2d at 162-63; *Envirite*, 158 Ill. 2d at 215; *Bates*, 125 Ill. 2d at 85.

Unfortunately, the State's description of this general rule of retroactivity and its characterization of Code section 104—21(a) as procedural are both incomplete. A more accurate statement of the foregoing general rule is that a statute will only be given retroactive effect where its application would not interfere with vested rights. *Envirite*, 158 Ill. 2d at 215; *Bates v. Board of Education, Allendale Community Consolidated School District No. 17*, 136 Ill. 2d 260, 269 (1990); *General Telephone Co. v. Johnson*, 103 Ill. 2d 363, 382 (1984). The mere fact that a law may be considered to affect only procedural matters does not guarantee that it will be applied retroactively if such application would deprive one of a constitutionally protected right. *Maiter v. Chicago Board of Education*, 82 Ill. 2d 373, 390-91 (1980); *Hogan v. Bleeker*, 29 Ill. 2d 181, 187 (1963); *Delbecarro v. Cirignani*, 261 Ill. App. 3d 644, 648, 633 N.E.2d 981, 983 (1994). With respect to the State's characterization of section 104—21(a) as merely procedural, the Supreme Court of Illinois emphasized in *Nitz* that the provision, while procedural in nature, was designed to enforce a fundamental constitutional right. *Nitz*, 173 Ill. 2d at 160-61. The court further stated that, "[a]lthough defendant's right to that particular procedure is wholly statutory, his right to inquiry concerning fitness flows from the due process guarantee." *Nitz*, 173 Ill. 2d at 160.

The court concluded that the defendant's claim constituted more than a mere statutory violation and that due process was denied where the court failed to invoke this procedural law. *Nitz*, 173 Ill. 2d at 161.

Consequently, in the instant case, it is undeniable that defendant's right to a competency hearing directly emanates from the constitutional prohibition against prosecuting individuals who are unfit to stand trial. The only issue to resolve in this matter, therefore, is whether defendant's right to a fitness hearing became vested before December 31, 1996, the effective date of the current amendment to section 104—21(a). Defendant's trial commenced on January 9, 1996, and sentencing concluded on February 9, 1996. We hold, therefore, that the preamended version of the section applied to defendant in the case at bar, since any right to a fitness hearing would have accrued by February 9, 1996, at the latest—long before the effective date of the amended provision. See *People v. McKay*, 282 Ill. App. 3d 108, 114-15, 668 N.E.2d 580, 585-86 (1996).

## II

■ Defendant also contends that the trial court violated his constitutional right to due process by imposing an excessive sentence because defendant exercised his right to a jury trial. Defendant argues that remarks made by the trial judge during the sentencing hearing revealed that defendant was being punished for not admitting guilt before trial and for electing to proceed with a trial by jury. As a result, defendant seeks a reduction of his sentence or a remand for a new sentencing hearing before a different judge.

It is well established that a trial judge's imposition of a penalty based on a defendant's refusal to admit guilt or assertion of his or her right to a jury trial is violative of due process. *People v. Ward*, 113 Ill. 2d 516, 526 (1986); *People v. Moriarty*, 25 Ill. 2d 565, 567 (1962). Nevertheless, it is equally recognized that the trial court is normally the proper forum in which a suitable sentence is to be determined, and the trial judge's decisions with respect to sentencing are entitled to great deference and weight. *People v. Illgen*, 145 Ill. 2d 353, 379 (1991); *People v. Godinez*, 91 Ill. 2d 47, 55 (1982); *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). Indeed, absent an abuse of discretion by the trial court, a sentence may not be altered upon review. *Ward*, 113 Ill. 2d at 526, quoting *Perruquet*, 68 Ill. 2d at 154. Furthermore, in determining whether a sentence was improperly imposed, the reviewing court should not focus on a few words or statements of the trial court; it should, rather, consider the complete record in its entirety. *Ward*, 113 Ill. 2d at 527, citing *People v. Sivels*, 60 Ill. 2d 102, 106 (1975).

Defendant relies on *People v. Byrd*, 139 Ill. App. 3d 859, 487 N.E.2d 1275 (1986), and *People v. Young*, 20 Ill. App. 3d 891, 314 N.E.2d 280 (1974), to support his contention that the trial judge's sentencing violated due process. The reviewing court in *Byrd* vacated the defendant's sentence due to the fact that the trial judge, during the sentencing hearing, strongly considered the defendant's continual denial of guilt. *Byrd*, 139 Ill. App. 3d at 866, 487 N.E.2d at 1280. Similarly, in *Young*, this court modified the defendant's sentence as a result of the following remarks made by the trial judge:

" '*** I have increased the sentence that I said that I would impose upon you *** the primary reason for increasing it is because *** the evidence clearly shows you are guilty' and, 'you shot the dice and they just came up craps. I have no inclination to give you the same thing had you chose [*sic*] to throw yourself on the mercy of the court.' " *Young*, 20 Ill. App. 3d at 894-95, 314 N.E.2d at 282.

Defendant argues that *Byrd* and *Young* are analogous to the case at bar. We disagree. The pertinent remarks of the trial judge complained of by defendant were as follows:

"This Court is often heard to say I don't send anyone to the Department of Corrections. They send themselves to the Department of Corrections. This is another situation. And even in this case, the defendant does not stand before the Court and say, yes, I did it, and I'm sorry.

He attempted one more time to con and this time, 12 people of this jury were not conned. They proved themselves to be more astute than the defendant thought they would be."

Viewed in the context of the entire record, we believe that the remarks by the trial judge in the instant case were distinguishable from those held to be improper in *Byrd* and *Young*. We do not believe that the trial judge's statements, when read in the context of otherwise proper sentencing commentary, can be interpreted to mean that defendant would have received a more lenient sentence had he admitted his guilt before trial or not elected to proceed with a jury trial. Our review of the record shows that the trial court, unlike in *Byrd* and *Young*, did not base its sentence on any continual denial of guilt or choice of jury trial on the part of defendant. On the contrary, defendant did not receive the maximum sentence allowed by law as he claims, as the trial court noted but did not exercise its right to impose an extended sentence for which defendant was eligible. Therefore, we hold that the trial court did not abuse its discretion in sentencing defendant.

Accordingly, we direct that this cause be remanded for the purpose of ascertaining whether defendant was entitled to a competency hearing in accordance with the preamended version of

section 104—21(a) and whether defendant was unfit during his trial or sentencing. We direct the trial court to conduct a thorough factual investigation with respect to the circumstances surrounding defendant's asserted use of psychotropic medication. If this factual examination establishes that defendant did, indeed, receive such medication during or proximate to the time of the trial or sentencing, the trial court is directed to hold a fitness hearing *nunc pro tunc* and make a final determination as to whether those drugs rendered defendant unfit during his trial or sentencing. If the trial court concludes that defendant was unfit at some time during that period, it is directed to vacate defendant's convictions and grant a new trial. If, however, it is found that defendant did not take psychotropic medication during that period, or that his receipt of those drugs had no meaningful effect upon defendant's fitness, then the trial court's judgment shall be affirmed.

Remanded with directions.

GORDON and LEAVITT, JJ., concur.