THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELANIE CREWS, Defendant-Appellant.

Fourth District No. 4—89—0048

Opinion filed November 9, 1989.

Michael B. Metnick, Diana N. Cherry, and Richard D. Frazier, all of Metnick & Barewin, of Springfield, for appellant.

John F. Dahlem, State's Attorney, of Virginia, for the People.

JUSTICE GREEN delivered the opinion of the court:

On October 17, 1988, the circuit court of Cass County entered judgment on jury verdicts returned finding defendant Melanie Crews guilty of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(1)) and solicitation (Ill. Rev. Stat. 1987, ch. 38, par. 8—1(a)). The court subsequently sentenced her to 30 years' imprisonment for murder and six years' imprisonment for solicitation, the sentences to run concurrently.

Defendant now appeals, contending: (1) the jury was not properly instructed regarding solicitation, accountability, and first degree murder; (2) section 8—5 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 8—5) prohibits convictions for both inchoate and principal offenses and, therefore, her conviction for solicitation to commit murder must fall; and (3) the trial court abused its discretion in sentencing defendant. We affirm the conviction and sentence for

first degree murder in full but vacate the conviction and sentence for solicitation.

During the trial of this cause, several witnesses testified on behalf of the State that, as early as June or July 1987, defendant expressed her unhappiness with her marriage to her husband, Mark Crews. One person stated defendant told her she wanted out of the marriage, but Mark Crews would not agree to a divorce. Numerous witnesses who worked with defendant at a nursing home in Virginia, Illinois, testified defendant approached them in late 1987 or early 1988 and asked them if they would help her "get rid" of her husband. Witnesses stated she asked them if they had any poisons or drugs which she could use to poison Mark Crews' milk shakes. Many also indicated defendant had asked them if they knew of any hit men she could hire to help her "get rid of" her husband.

David Shoemaker testified defendant told him Mark Crews had been beating her and their small son, and she had tried to place poison in his milk shakes. Shoemaker said defendant talked with him frequently about getting him to help her kill her husband. He said she gave him a .357 magnum pistol after Thanksgiving 1987 and told him he could have her husband's gun collection if he helped her kill him. Shoemaker further testified she threatened both him and his family if he did not cooperate with her.

Shoemaker testified defendant called him the evening of January 19, 1988, and told him, "If you don't want anything to happen to your kids, you will do it tonight." He drove to the Crews' residence and accompanied Mark Crews to a shed to look at a motorcycle. Shoemaker said defendant went with them and stood behind him, encouraging him to "do it now." Shoemaker stated he removed the pistol from the waistband of his pants and pulled the trigger. Mark Crews' body was found in the shed behind his house. The parties stipulated he had died from a gunshot wound to the back of the head. The evidence indicated the bullet which killed Crews had come from the .357 magnum pistol which police removed from David Shoemaker's residence.

The testimony of several witnesses corroborated Shoemaker's testimony. One co-worker indicated defendant told her on January 19, 1988, that Shoemaker was coming to their house that night to kill her husband, Mark Crews. She said defendant informed her she was not sure if the "job" had been completed yet because she had not yet spoken with Shoemaker. However, the co-worker stated defendant later approached her, put her finger to her head and said Shoemaker had shot her husband. Another co-worker testified defendant told her on

January 20, 1988, that Shoemaker had been to her house the night before to "finish the job," and the shooting had occurred in a "little house" behind her residence.

Defendant denied she had asked others for poisons or drugs or for assistance in helping her kill her husband. She specifically denied asking David Shoemaker to kill her husband. She stated the last time she saw her husband was when he left with someone the evening of January 19, 1988, to go down to a farm to look at a dirt bike. She did acknowledge she lived apart from Mark Crews for one month in 1986. In addition, she stated she and Mark had discussed the possibility of a divorce during 1986 and 1987, but Mark would not agree to one.

Following presentation of the evidence, an informal jury instruction conference was held, and the court allowed, without defense objection, numerous Illinois Pattern Jury Instructions, Criminal (2d ed. 1981) (IPI Criminal 2d) offered by the State. Among those instructions were IPI Nos. 6.02 and 5.03, which stated as follows:

"To sustain the charge of Solicitation, the State must prove the following propositions:

*First*: That the Defendant commanded, encouraged, or requested David Shoemaker to commit First Degree Murder; and

*Second*: That the Defendant did so with the intent that the offense of First Degree Murder be committed.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

(See, *e.g.*, IPI Criminal 2d No. 6.02.) And:

"A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of that offense, he knowingly *solicits*, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense." (Emphasis added.) IPI Criminal 2d No. 5.03, at 40.

Defendant was charged by information with, and the jury found her guilty of, committing the crimes of solicitation and first degree murder (by accountability). Defendant maintained in her post-trial motion and again maintains on appeal the court erred in tendering both IPI Criminal 2d Nos. 5.03 and 6.02 to the jury because the use of the

word "solicits" in IPI Criminal 2d No. 5.03 caused the jury to believe it *had* to find defendant guilty of first degree murder by accountability if it found her guilty of the crime of solicitation and found the person who was solicited to kill the victim did so.

We understand defendant's argument to be that a solicitation within the meaning of section 5—2 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 5—2) and IPI Criminal 2d No. 5.03 concerning accountability differs from the type of solicitation which is the basis of the inchoate offense of solicitation described in section 8—1(a) of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 8—1(a)) and IPI Criminal 2d No. 6.02. Thus, according to defendant, the jury was improperly and confusingly instructed in a manner to indicate that a solicitation of the type involved in the inchoate offense of solicitation was a sufficient basis to find the defendant guilty of murder by accountability.

Defendant relies upon *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, where an accused was charged with murder, attempt (murder), and solicitation to commit murder. The proof of the accused's guilt of murder arose entirely from a theory of accountability because of having solicited another to kill the victim. The accused was acquitted of the first two charges but convicted of solicitation. On appeal, he asserted that his conviction was invalid because the verdicts were inconsistent and he had been twice placed in jeopardy. The supreme court answered the contention the verdicts were inconsistent on the basis that even if the person solicited to kill the victim was conclusively shown to have killed the victim and that made the verdicts logically inconsistent, the verdicts were legally consistent.

The *Hairston* court also examined the double jeopardy question beginning with the words:

> "Bottomed upon a premise that the proof necessary to convict him of the principal crimes was identical with the proof necessary to convict him of solicitation, defendant next contends that the verdicts were inconsistent and that *he has been placed in double jeopardy*. While we believe the single prosecution here forecloses any claim of exposure to double jeopardy and that the problem is instead largely one of inconsistent verdicts, even if it were considered otherwise it is manifest that the claim of double jeopardy has no merit." (Emphasis added.)
> (*Hairston*, 46 Ill. 2d at 357, 263 N.E.2d at 847.)

Clearly the supreme court was correct in holding that when defendant was charged with both murder, attempt (murder), and solicitation to commit murder and tried in a single prosecution, he was not placed twice in jeopardy. If the law were otherwise, an accused could not

properly be charged with and tried on a principal offense and an included offense in the same prosecution.

After making the foregoing explanation of why the *Hairston* defendant was not placed in double jeopardy, the supreme court further concluded that no double jeopardy resulted from the dual charges of solicitation to commit murder and murder because the inchoate offense of solicitation involved somewhat different conduct than the solicitation which is an element of accountability. The court stated:

> "While the use of the word 'solicit' in the accountability statute would appear to be grammatically out of harmony with its purport, we are constrained to remark that section 5—2 (accountability) and section 8—1 (solicitation) relate to different conduct and as a consequence entail different elements of proof. Section 5—2, in its full context, contemplates an accessorial act which 'promotes' or 'facilitates' another person in 'the planning or commission' of an offense; section 8—1, on the other hand, encompasses only conduct whereby an accused 'commands, encourages or requests another' to commit an offense." *Hairston,* 46 Ill. 2d at 359, 263 N.E.2d at 848.

■ We deem the foregoing explanation to be *dictum* which does not control our decision here. Defendant cites no other authority for drawing that distinction between the inchoate offense of solicitation and the type of solicitation which is an element of criminal accountability. We are unaware of any such authority. A highly respected text on criminal law, in describing the inchoate offense of solicitation, states that, with exceptions not applicable here, "if *A* solicits *B* to commit a crime and *B* then proceeds to commit the crime in response to *A*'s solicitation, then *A* is liable as an accomplice for the crime." (2 W. La Fave & A. Scott, Substantive Criminal Law §6.1, at 14 (1986).) We hold proof that (1) defendant committed the inchoate offense of solicitation by commanding, encouraging, or requesting Shoemaker to kill her husband; (2) defendant did so with the intent to "promote or facilitate" the killing; and (3) in response thereto, Shoemaker killed defendant's husband, taken together, was sufficient to prove all of the necessary elements of defendant's guilt by accountability of the offense of first degree murder. The questioned instructions so indicated and were proper.

After trial, defendant presented, without objection by the State, both written and oral statements made by members of the jury after rendition of its verdicts which revealed the jurors did, in fact, raise questions during deliberations concerning the tendered instructions. The juror who filed the written statement wrote it was his "under-

standing [that], if [the] *** jury found Melanie Crews guilty of solicitation, then [it] had to find her guilty of murder."

■■ Defendant suggests the existence of these statements provides support for her argument because, here, the alleged confusion resulting from these instructions was not merely speculative but real. As we have indicated, the instructions given were proper. They indicated the jury could find defendant was guilty by accountability of first degree murder if she committed the offense of solicitation of Shoemaker, and in response, he committed a first degree murder of defendant's husband. Accordingly, the statements do not indicate the jury was confused. Moreover, while not raised by the State on appeal, we are compelled to hold a jury may not impeach its own verdict through affidavit or testimony which reveals its misunderstanding of instructions tendered. (See *Chalmers v. City of Chicago* (1982), 88 Ill. 2d 532, 431 N.E.2d 361.) Accordingly, we could not consider these statements even if they did indicate confusion on the part of jurors.

■■ Next, defendant maintains her conviction for solicitation to commit murder (Ill. Rev. Stat. 1987, ch. 38, par. 8—1(a)) must be vacated because section 8—5 of the Code prohibits convictions for both the inchoate and principal offenses. (Ill. Rev. Stat. 1987, ch. 38, par. 8—5.) Since defendant was, in fact, convicted of the principal offense, here first degree murder, she claims her conviction for solicitation must fall. We agree.

We recognize a conflict exists between the First and Fifth District Appellate Courts of this State regarding this particular issue. In *People v. Columbo* (1983), 118 Ill. App. 3d 882, 455 N.E.2d 733, defendants were convicted of three counts of murder, conspiracy, and solicitation. Like defendant here, the defendants in *Columbo* claimed they could not be convicted of both solicitation and murder because section 8—5 of the Code prohibited convictions for both the inchoate and principal offenses. Relying on *Hairston* (46 Ill. 2d 348, 263 N.E.2d 840), and *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, the first district rejected defendants' argument and upheld the convictions.

However, in *People v. Davidson* (1987), 160 Ill. App. 3d 99, 514 N.E.2d 17, the fifth district vacated the defendant's convictions for solicitation and conspiracy after she had also been convicted in the trial court of murder by accountability in addition to those two crimes. That court rejected the reasoning of the *Columbo* court and concluded the plain language of section 8—5 of the Code mandated a vacation of the convictions for solicitation and conspiracy.

We agree with *Davidson*. At all times involved here, section 8—5 of the Code has stated: "No person shall be convicted of both the in-

choate and the principal offense." (Ill. Rev. Stat. 1987, ch. 38, par. 8—5.) *Columbo* failed to recognize section 8—5 of the Code.

Defendant additionally argues her solicitation conviction should be reversed due to errors made in instructing the jury as to that offense. However, because we vacate the solicitation conviction as aforementioned, we need not address that issue here.

Defendant's final argument is that the trial court abused its discretion in sentencing her to 30 years' imprisonment for her first degree murder conviction. She claims her sentence is disproportionately high, considering the trial court (1) admitted only one statutory aggravating factor "remotely" applied; (2) acknowledged several statutory mitigating factors applied; (3) failed to consider other applicable mitigating factors; and (4) stated defendant was a "model citizen" except for "this one aberration."

In sentencing the defendant here, the court acknowledged it had received two to three dozen letters from various people, which were all favorable to the defendant. It further revealed it had read reports submitted by defendant which indicated "she [had gone] through hell with [Mark] Crews." It stated that, in sentencing defendant, it would consider all evidence presented, reports filed, arguments made, and the applicable factors in aggravation and mitigation.

With regard to the statutory aggravating and mitigating factors in particular, the court noted defendant had no prior history of criminal activity, that her criminal conduct was the result of circumstances unlikely to recur and that her character and attitude revealed she was unlikely to commit another crime. (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—5—3.1(a)(7), (a)(8), (a)(9).) It further stated the only aggravating factor which even "remotely" applied was that a more severe sentence was necessary to deter others from committing the same crime. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(7).) The court continued, though, and stated other nonstatutory, aggravating factors existed under the circumstances which it needed to consider. It indicated the crime was not a sudden one but, rather, had been premeditated by defendant for a year or more. Furthermore, defendant sought others to help her commit the crime and threatened or coerced the perpetrator into committing the crime. Finally, the court commented defendant had shown no remorse for the death of her husband. The court then sentenced defendant to 30 years in prison for her conviction for first degree murder.

We have reviewed the evidence submitted with regard to sentencing, including the testimony of witnesses who testified on behalf of defendant, the sentencing memorandum filed by her and letters sent

to the court. Portions of the sentencing memorandum itself detailed a marriage during which Mark Crews mentally, physically and sexually abused the defendant. A narrative filed by defendant revealed Crews frequently ridiculed and embarrassed her in front of others and treated her as his slave. The narrative also indicated he often humiliated her, degraded her feelings, and forced her to perform certain utterly degrading acts.

The narrative further revealed Crews was jealous of the progress defendant had made at her job and in her weight loss, so much so he would force her to eat against her will so she would become fat. It further indicated he frequently punched her and pushed her around, especially if she did not immediately comply with his demands. Finally, she said that, in 1987, he began forcing her to participate in reenacting sadistic sexual acts he had seen in movies he had rented. She indicated this involved lewd language accompanied by tying her and sexually abusing her vaginally, anally, and orally while coercing her by the presence of a nearby loaded shotgun which he threatened to use. Defendant's narrative revealed she had tried to leave Crews in the past, but she reluctantly returned when Crews put a gun to her head and threatened to kill her if she did not return.

The testimony of several witnesses corroborated some of the factual circumstances of this abusive relationship. Police reports filed in 1986 further detailed complaints made by defendant concerning her husband's violent behavior and her fear of him. Witnesses who testified and others who wrote letters on her behalf described defendant as a caring, compassionate person who was a hardworking nurse and loving mother to her four-year-old son.

Defendant claims that, based on the foregoing, the court clearly erred in failing to apply other statutory mitigating factors, including the fact substantial grounds existed which tended to excuse or justify her criminal conduct and that her imprisonment would cause substantial hardship to her dependents. (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—3.1(a)(4), (a)(11).) She further argues that, because of the substantial evidence presented in mitigation, her sentence was excessive and inconsistent with the purposes of the Code.

■■ ■ In setting forth the reasons for the sentence imposed, a trial court need not recite, and assign a value to, each fact presented at the sentencing hearing. (*People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9.) It is presumed the court considered all evidence offered in mitigation absent some statement to the contrary. (*People v. Bradney* (1988), 170 Ill. App. 3d 839, 525 N.E.2d 112.) Even if we ourselves may have chosen to impose a more lenient sentence had we been in

the position of the trial court here, we emphasize we cannot on review replace the trial court's judgment with that of our own simply because our decision might have been different. Rather, where, as here, a sentence falls within the statutory range and the court has not erred in the selection of information to consider, we can properly alter the severity of a sentence only when it constitutes an abuse of discretion by the trial court. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) Based on the totality of the circumstances present here, we cannot conclude the trial court abused its discretion in sentencing defendant to 30 years in prison for her conviction for first degree murder.

For the reasons stated, defendant's conviction and sentence for first degree murder are affirmed, and defendant's conviction and sentence for solicitation are vacated.

Affirmed in part; vacated in part.

McCULLOUGH, P.J., and SPITZ, J., concur.