THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MONTE FRANKLIN McCARTHY, Defendant-Appellant.

Fourth District No. 4—90—0720

Opinion filed May 23, 1991.

Donald E. Groshong, of Alton, for appellant.

Scott H. Walden, State's Attorney, of Quincy (Kenneth R. Boyle, Robert J. Biderman, and Dale M. Wood, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant was charged by information with three counts of aggravated criminal sexual abuse (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(d)) (placing finger in vagina, placing mouth on vagina, touching her breasts), and one count of unlawful delivery of alcohol to a minor (Ill. Rev. Stat. 1987, ch. 43, par. 131(a)). Following a jury trial in Adams County, Illinois, on June 12 through 14, 1990, defendant was convicted on two counts of aggravated criminal sexual abuse and one count of unlawful delivery of alcohol to a minor, but acquitted on the count of placing his mouth on her vagina. Defendant was sentenced to six years in the Department of Corrections for the sex offenses, and it is these convictions he appeals. We affirm.

Defendant, Monte F. McCarthy, was 35 years old at the time of the incident. Defendant began dating the victim's sister (A.S.) in 1986 after they met while she was waitressing at a restaurant defendant frequently visited. This relationship lasted approximately three years, although defendant admitted having seen her within 10 days of the trial.

The victim (M.S.) in this case was the younger sister of A.S. She was 14 years old at the time of the offenses and resided with her parents in Hamilton, Illinois. M.S. would visit her sister in Quincy for the weekend, and it was on one of these weekend visits that the incidents defendant was convicted of occurred.

On June 11, 1988, defendant, M.S., and A.S. went to Old Tony's Place in Quincy, Illinois, for dinner. M.S. drank two Tom Collins (an alcoholic drink with gin or vodka) with her dinner. Defendant paid for the dinner and drinks. After dinner, the trio went to a bar, where M.S. consumed at least four more Tom Collins drinks. Defendant also purchased these drinks for M.S.

Later that evening, they went back to A.S.'s apartment. M.S. testified she brushed her teeth, and put on a T-shirt and underpants. A.S. was in the other room watching television at this point.

M.S. testified that sometime after she went to bed, defendant came into the bedroom and got into bed with her. According to M.S., defendant kissed her on the mouth with his tongue. Defendant then pulled up her T-shirt and placed his hand and mouth on her breasts. Defendant proceeded to pull down M.S.'s underpants and placed his mouth on her vagina. M.S. further testified that he placed what she believed to be his finger in her vagina. M.S. testified she told defendant what he was doing hurt, so he stopped, although she had to ask him twice. This incident lasted approximately one hour.

M.S. testified she woke up the next morning at approximately 6:30 a.m. Defendant was in the middle of the bed with M.S. and A.S. on either side of him. They ate a pancake breakfast, which M.S. stated was bought from a restaurant, although she did not know who purchased this food. Defendant and A.S. drove M.S. back to her parents' house later that day.

On July 29, 1988, M.S. went to St. Louis with A.S. and defendant. Due to a mix-up in reservations, their hotel room only had one bed, rather than two as A.S. had requested. M.S. testified she slept on the couch in the room the first night they spent in St. Louis, but the next night she slept in the bed because her sister had passed out on the couch. M.S. testified she changed into her nightgown and got into bed. Thereafter, defendant, wearing only his underwear, got into

bed with her. Defendant took her hand and placed it on his penis. When M.S. pulled away, defendant asked why she was upset now, when she did not mind previously. M.S. testified defendant said to her that he had his penis approximately two inches inside her vagina on the night of June 11, 1988. She stated she had believed it was his finger inside her vagina but in fact defendant told her it was his penis.

Defendant became angry and got out of bed and began dressing. He threw some money at M.S. and stated she and her sister could take a taxi back to Quincy. Defendant also told M.S. she would have to explain his absence to her sister. According to M.S., defendant did not leave the hotel room, but thereafter slept on the floor. The next morning, defendant attempted to get into bed again with M.S., but she got up and awakened her sister. M.S. has not spoken to defendant since that weekend.

The day before M.S. went to St. Louis with her sister and defendant, she obtained a false driver's license using her sister's birth certificate and other forms of identification. M.S. testified she obtained this license in order to be admitted into bars and to be allowed to drive. M.S. was approached on July 27, 1988, by two Quincy police officers about this false license. This was when she first related to them the details of the encounter with defendant.

After the police questioned M.S. about this false driver's license, they taped her statement about the events of June 11, 1988. At this time, M.S. only stated that defendant placed his finger in her vagina. It was not until March 1, 1990, that M.S. told anybody about defendant touching her breasts and placing his mouth on her vagina. M.S. explained she was embarrassed to tell the officers all of what happened, but she later realized she had to tell everything.

Finally, M.S. testified she was angry with defendant because he hurt her and caused a rift between her and her sister. M.S. also stated she was angry with defendant because he had lied about her family. Last, M.S. testified she had not spoken to her sister since early in 1989.

Defendant testified he spent approximately 95% of the time at A.S.'s apartment while they dated. Defendant testified he knew A.S. was now living in St. Louis and worked as a dancer in a night club. Defendant admitted providing alcohol to M.S. on June 11, 1988. However, he denied ever having sexual contact with M.S.

According to defendant, on June 11, 1988, after leaving the second bar, M.S. became physically ill. Defendant stated A.S. attempted to clean M.S. up and calm her down for approximately 20 minutes. Defendant and A.S. talked for approximately one hour in the living

room of A.S.'s apartment, and defendant then left. Defendant returned the next morning, after receiving a telephone call from A.S. He picked up pancakes A.S. had ordered from a restaurant and brought them to the apartment, where they all ate breakfast. Defendant and A.S. then drove M.S. to her parents' home around noon that day. Defendant stated he and A.S. slept in the bed both nights in St. Louis and that M.S. slept on the couch.

The defense called Larry Renfrow, the records keeper for Illinois Bell Telephone Company. He testified that two telephone calls were made from A.S.'s apartment on June 12, 1988, one at approximately 10:12 a.m. to a number ending with the digits 8040 and another at approximately 10:33 a.m. to a number ending with the digits 7008. The parties stipulated the number of the Coach House Restaurant is 223-8040. Defendant testified his number is 222-7008 and has been so for 10 years.

Defendant was sentenced to six years' incarceration with the Department of Corrections plus fined $1,000 and court costs. Defendant made a motion for a new trial, which was denied prior to the sentencing hearing. Defendant also made a motion for reconsideration of sentence, which was also denied. Defendant then filed this appeal on October 18, 1990.

Defendant's first argument is that the evidence presented was neither clear and convincing nor corroborated and was thus insufficient to support his conviction. Defendant cites several cases for the proposition that where a conviction for a sex offense depends upon the testimony of the complaining witness and the defendant denies the charges, a more stringent burden of proof exists, requiring the conviction be supported by corroboration of the victim's testimony or evidence that the victim's testimony is clear and convincing. (*People v. Thompson* (1990), 198 Ill. App. 3d 417, 555 N.E.2d 1122.) Defendant contends since this case was almost entirely based on the victim's testimony, which was neither clear and convincing nor corroborated, the evidence was insufficient to support his conviction.

■■ This court has held:

> "We will no longer require that in a case in which a sex offense is charged, the State must demonstrate either the victim's testimony is clear and convincing or substantially corroborated to prove guilt beyond a reasonable doubt." (*People v. James* (1990), 200 Ill. App. 3d 380, 394, 558 N.E.2d 732, 742, *appeal denied* (1990), 135 Ill. 2d 562.)

(See also *People v. Roy* (1990), 201 Ill. App. 3d 166, 184-85, 558 N.E.2d 1208, 1221, *appeal denied* (1991), 136 Ill. 2d 552.) There is no

legitimate reason to place additional requirements on the victim's testimony solely because of the nature of the crime. Testimony of no other category of crime victim is held to be automatically suspect or require additional proof beyond the statutory requirements. *James*, 200 Ill. App. 3d at 394-95, 558 N.E.2d at 742.

Therefore, the evidence must be reviewed pursuant to the same standard applied in every other criminal case. That standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

■ Defendant contends M.S.'s testimony was "so inconsistent, contradictory and confusing that it was insufficient to support a conviction." Any shortcomings in a victim's testimony do not destroy credibility but merely affect the weight to be afforded to the testimony by the trier of fact. (*People v. Allison* (1983), 115 Ill. App. 3d 1038, 452 N.E.2d 148.) The resolution of factual disputes and the assessment of the credibility of witnesses are for the trier of fact. The reviewing court will not reverse a conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to defendant's guilt remains. *Roy*, 201 Ill. App. 3d at 185, 558 N.E.2d at 1221.

■ It is the jury's function to determine the credibility of the witnesses. M.S. was on the stand for approximately 3½ hours, during which she was subjected to vigorous cross-examination by defense counsel. The jury also heard defendant testify and deny the incidents. Defendant argues the telephone records establish he did not spend the night at A.S.'s apartment. However, it was within the province of the jury to disbelieve these records. Other circumstances exist to explain the records (*i.e.*, an answering machine answered the call or defendant left the apartment that morning to return home and clean up). Any inconsistencies in her testimony were brought out on cross-examination. Thus, the jury could have disregarded the telephone calls as proof defendant did not sleep at A.S.'s apartment that night.

Defendant argues M.S.'s credibility was affected by the fact she did not report this incident until she was approached by the police regarding her false driver's license. Defendant implies M.S. concocted this story to shift the police investigation from herself to defendant. Again, this possible motive to fabricate was brought out on both direct and cross-examination. The jury had the prerogative to either believe M.S. or defendant regarding the promptness of the complaint.

The evidence was sufficient to establish defendant's guilt beyond a reasonable doubt.

Defendant's second argument is the trial court erred in admitting State's evidence consisting of four photographs of defendant and M.S. which were taken in March or April 1988 when M.S. was visiting her sister. According to both M.S. and defendant, these photographs depict innocent "clowning around." M.S. was playing "dress up" with her sister's clothing and modeled several outfits for her sister and defendant. The pictures show defendant and M.S. in various embraces.

Defendant objected to the admission of these photographs on grounds they were irrelevant and their prejudicial effect outweighed any probative value. Defendant maintains these photographs were used by the State to bolster the victim's credibility and suggest that defendant was the kind of person who had the propensity to commit these crimes because of his immoral character. The State responds these photographs were admitted for the purpose of showing the relationship and familiarity between defendant and M.S.

■■ ■ The admission of evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a clear showing of abuse of that discretion. (*People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696.) Evidence is relevant where the fact or circumstances offered tend to prove or disprove a disputed fact or to render the matter in issue more or less probable. (*People v. Smith* (1987), 154 Ill. App. 3d 837, 507 N.E.2d 543.) In sex-related offenses, evidence of prior acts between the defendant and the complaining witness is admissible to show the familiar relation of the parties and to corroborate the complaining witness' testimony as to the act relied upon for conviction. *People v. Bradley* (1984), 128 Ill. App. 3d 372, 470 N.E.2d 1121.

Defendant relies on this court's decision in *People v. Holm* (1989), 188 Ill. App. 3d 908, 544 N.E.2d 1237, to support his contention that these photographs were improperly admitted into evidence. In *Holm*, defendant was on trial for aggravated criminal sexual abuse of one of his daughters. The trial court allowed into evidence a series of 18 pictures showing another daughter of defendant in various stages of undress. Both defendant and the daughter in the pictures testified the photographs were taken for the daughter's boyfriend, who was in the Navy, and both denied any sexual relationship between them.

This court found the photographs to be inadmissible because the prejudicial impact outweighed any probative value. This court stated that even in these "anything goes" days, society still deems it im-

proper for a father to take these types of pictures of his daughter. (*Holm*, 188 Ill. App. 3d at 918, 544 N.E.2d at 1245.) In a closely balanced case, since the possibility existed that defendant could be convicted because of his bad moral character reflected in these pictures, reversal of the defendant's conviction was necessary. *Holm*, 188 Ill. App. 3d at 918, 544 N.E.2d at 1245.

■ The evidence established any prejudicial impact from these photographs was outweighed by their probative value. First, the photographs are evidence of the fact that there was a relationship between defendant and M.S. Any prejudice that defendant may have incurred because of these photographs was sufficiently cured on cross-examination. Defendant's counsel questioned M.S. with regard to these pictures and she admitted they were only "clowning around" when the pictures were taken and that nothing sexual happened at that time. Thus, any possibility that the jury would consider these photographs as evidence of defendant's immoral character was dispelled by the victim's testimony as to the circumstances of these pictures. The trial court did not err in admitting these photographs.

Defendant's second argument regarding an evidentiary ruling is the trial court erred in denying admission into evidence a letter written by M.S. to her sister. Because of a conflict of interest, defendant's original counsel withdrew from the case and defendant retained new counsel for trial. Defense counsel at trial was under the mistaken belief that his predecessor had provided the letter to the State. However, the letter was never given to the State in discovery.

When defense counsel attempted to impeach M.S.'s credibility with this letter, the State's Attorney realized the letter was an item not provided in discovery. An objection to any further questioning regarding the letter was made and, after hearing argument and allowing the State's Attorney to discuss the letter with M.S., the trial court granted the State's motion to prevent the defense from using the letter to impeach M.S. The court specifically found the State had been denied a chance to prepare the witness for testimony regarding the letter, and although M.S. admitted the letter was in her handwriting, she had no recollection of when it was written.

Defendant contends the exclusion of this evidence was too harsh a sanction and that a recess or continuance would have protected the State from any surprise created by the discovery violation. Defendant maintains this discovery violation was neither blatant nor wilful and since this discovery violation was attributable to prior defense counsel, the document should have been admissible. The State responds the document was properly excluded because of the discovery viola-

tion as well as on the grounds that it was uncertain, undated, irrelevant and immaterial.

■ Supreme Court Rule 415(g)(i) provides:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." (134 Ill. 2d R. 415(g)(i).)

The correct sanction to be applied for a discovery violation is left to the trial court's discretion, and the judgment of the trial judge is given great weight. (*People v. Morgan* (1986), 112 Ill. 2d 111, 492 N.E.2d 1303.) A trial court may reject offered evidence as irrelevant if it has little probative value due to its remoteness, uncertainty, or the possibility of unfair prejudice. *People v. Cregar* (1988), 172 Ill. App. 3d 807, 526 N.E.2d 1376.

■ There was no abuse of discretion by the trial court in excluding this evidence. First, it is uncontradicted that the letter was not provided to the State in discovery. This alone provides a proper basis for exclusion. Moreover, the contents of the letter were irrelevant to the issue of defendant's guilt. The thoughts, concerns, or intentions of a 14-year-old victim of aggravated criminal sexual abuse do not prove or disprove any element of the crime. The exclusion of the letter was proper.

The third evidentiary issue raised by defendant concerns the scope of cross-examination of defendant concerning his relationship with A.S. The State's Attorney questioned defendant as to A.S.'s past and current employment as an exotic dancer. Defendant suggests this line of questioning was designed to portray to the jury defendant's immoral character through his association with A.S. Defense counsel objected to this line of questioning by the State's Attorney on cross-examination of defendant.

■ A trial court has discretion to allow the prosecution wide latitude during cross-examination of the defense witnesses. (*People v. Kline* (1982), 92 Ill. 2d 490, 442 N.E.2d 154.) The proper scope of cross-examination extends to matters raised on direct examination, including all matters which explain, qualify, or destroy the testimony on direct examination. (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 464 N.E.2d 659.) Only where the court has abused its discretion, resulting

in manifest prejudice to the defendant, will a reviewing court interfere. *Kline*, 92 Ill. 2d at 504, 442 N.E.2d at 160.

 The trial court did not abuse its discretion in overruling defense counsel's objection to the State's Attorney's questioning of defendant regarding A.S.'s employment. First, defense counsel raised the issue on direct examination. He specifically asked defendant whether A.S. had employment other than that as a bank teller at the bank during the summer of 1988. Defendant stated he could not recall that information. Clearly, if he did have that knowledge, he was subject to impeachment on cross-examination. This was precisely the subject of the State's Attorney's questions. Furthermore, the question, even if improper, was on a collateral matter and, thus, would be harmless error. The employment of A.S. had nothing to do with the issue of whether defendant sexually abused M.S. The employment of A.S. was essentially a peripheral matter to establish that defendant became acquainted with M.S. because of his relationship with A.S. No prejudice resulted to defendant because of this questioning by any implication of his character through his association with A.S.

Defendant's final argument concerning the evidence is that the prosecution committed error during closing argument by referring to M.S. sobbing during her testimony. Defendant suggests this was an improper appeal to the jury for sympathy for M.S. The State responds initially by noting defendant has waived this argument due to a lack of an objection at trial, and further waived the issue by failing to cite any authority to support this argument. Moreover, the State contends this argument was proper as it only encouraged the jury to use its observations of the demeanor of M.S. when she testified to determine her credibility.

██ ██ Defendant has waived this argument for both reasons argued by the State. Although defendant raised this issue in his posttrial motion, there was no objection to the State's closing argument at trial. To preserve an argument for appeal, both an objection at trial and a written post-trial motion raising the issue are required. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) Further, Supreme Court Rule 341(e)(7) provides points not argued or supported by authority with citations are waived. (134 Ill. 2d R. 341(e)(7).) The well-established rule is mere contentions without argument or citation of authority do not merit consideration on appeal. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 453 N.E.2d 1133.) Contentions supported by some argument but by absolutely no authority do not meet the requirements of Supreme Court Rule 341(e)(7). (*In re Marriage of*

*Drummond* (1987), 156 Ill. App. 3d 672, 509 N.E.2d 707.) This argument of defendant, which contained no citation to any supporting authority, is waived.

■■ ■ Nevertheless, these remarks by the State's Attorney were proper. Prosecutors are allowed great latitude in closing arguments. To determine whether error exists, each case must be decided on its own facts. (*People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.) The substance and style of closing arguments are within the discretion of the trial court, and its finding will not be disturbed absent extreme error. (*People v. Maldonado* (1981), 101 Ill. App. 3d 948, 428 N.E.2d 1087.) The State may discuss the credibility of witnesses during closing and rebuttal arguments, when such discussion is based upon the evidence or reasonable inferences therefrom. (*People v. Eichelberger* (1989), 189 Ill. App. 3d 1020, 546 N.E.2d 274.) Improper remarks generally do not constitute reversible error unless they result in substantial prejudice to the accused. Any error resulting from prosecutor's comments is generally cured when the trial court sustains objection or admonishes the jury. *Eichelberger*, 189 Ill. App. 3d 1020, 546 N.E.2d 274.

■■ Here, the State's Attorney's statements in closing argument were not designed to arouse sympathy for M.S. Rather, they were merely comments reflecting what the attorneys and the trial court, as well as the jury, had observed of her demeanor when she testified. It was obvious to the jury that she had sobbed on the stand and that testifying was an emotional experience, as were the events of June 11, 1988. These were proper comments to the jury to assess her credibility because of her demeanor. Further, if this was error, the jury instructions cured it. Specifically, the instructions informed the jury it was to determine the credibility of the witnesses and the weight to be given to the testimony of each. The instructions further told the jury the manner in which a witness testified was a factor to be used to determine believability and the weight to be given that witness' testimony. Finally, another instruction indicated to the jury that neither sympathy nor prejudice should influence it in its decision. Thus, any error caused by these statements was sufficiently cured through instructions.

Defendant maintains he was denied his right to the effective assistance of counsel because of his attorney's failure to provide the letter from M.S. to her sister to the State in discovery. Defendant alleges this failure resulted in the exclusion of the letter, which prevented any inquiry about it on cross-examination of M.S. which, in turn, could have affected her credibility. Defendant contends further

denial of this right resulted to him through his trial counsel's failure to object more strenuously to the questioning of defendant concerning the employment of A.S., and for the complete failure to object during the State's closing argument with respect to the comments on the demeanor of M.S. during her testimony.

■■ To prevail on a claim of ineffective assistance of counsel, a defendant must show counsel's representation fell below an objective standard of reasonableness and that counsel's substandard representation so prejudiced the defense as to deny the defendant a fair trial. (*People v. Horton* (1991), 143 Ill. 2d 11; *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) To show prejudice, defendant must establish that but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) A reviewing court does not have to determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

■■ The State concedes the failure to provide the letter in discovery falls below an objective level of competency. Nevertheless, defendant cannot show there is a reasonable probability that had this evidence been provided in discovery, the result of the proceeding would have been different. The trial court excluded the letter for reasons in addition to the discovery violation. The letter may have been excluded even if it had been previously disclosed. So, defendant cannot establish the outcome of the proceeding would have been any different had the letter been properly disclosed to the State.

■■ Defendant's other arguments regarding his right to the effective assistance of counsel can be disposed of in a similar fashion. First, defense counsel objected to the cross-examination of defendant concerning the employment of A.S. on the grounds of relevance. The State's Attorney argued the line of questioning was merely designed to follow up some areas brought up on direct examination and the trial court agreed with this argument. Defense counsel opened the door to defendant's knowledge of A.S.'s employment and the State's Attorney was correct in asserting these questions were proper on cross-examination. There would be no point in counsel arguing further when the State's Attorney was clearly correct. Defense counsel is not required to make losing motions or objections in order to provide effective legal assistance. *People v. Palmer* (1989), 188 Ill. App. 3d 414, 545 N.E.2d 743.

■■ Finally, defendant contends the failure of counsel to object at all to the State's closing argument amounts to ineffective assistance of counsel. A reasonable trial tactic which fails does not constitute incompetence of counsel. (*People v. Jones* (1987), 162 Ill. App. 3d 487, 515 N.E.2d 471.) Counsel's failure to object may be construed as an indication that defense counsel did not consider the matter to be of critical importance. (*People v. Kokoraleis* (1989), 132 Ill. 2d 235, 547 N.E.2d 202, *cert. denied* (1990), 497 U.S. 1032, 111 L. Ed. 2d 804, 110 S. Ct. 3296.) Initially, this failure to object does not fall below an objective standard of reasonableness. Clearly, whether to object is a trial strategy, and to object when it would be overruled would be futile. The State's Attorney's closing argument was proper and, thus, defense counsel had no grounds for an objection. Further, no prejudice resulted to defendant because the jury was specifically instructed that sympathy was not a part of the trial and should play no part in its deliberations. Thus, any error was cured by these instructions and defendant cannot establish the result of the proceedings would have been any different had his attorney objected. The totality of the circumstances demonstrates defendant was not denied effective assistance of counsel.

Aggravated criminal sexual abuse is a Class 2 felony with a possible sentence of three to seven years. (Ill. Rev. Stat. 1987, ch. 38, pars. 12—16(e), 1005—8—1(a)(5).) Defendant was sentenced to six years on each count, with the sentences to run concurrently. For his final argument, defendant contends these sentences are excessive and constitute an abuse of discretion by the trial court because it failed to take into account defendant's lack of prior felony arrests. Defendant asserts the sentences are excessive for the nature of the crime and that a reduced sentence should be granted to allow him to acquire "restoration to a meaningful, productive life."

■■ The imposition of a sentence is a matter of judicial discretion, and, absent an abuse of discretion, the sentence of the trial court will not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) In setting forth the reasons for the sentence imposed, a trial court need not recite, and assign a value to, each fact presented at the sentencing hearing. (*People v. Crews* (1989), 191 Ill. App. 3d 228, 547 N.E.2d 580.) The fact that a defendant is a first-time offender is no more than a mitigating factor that the trial court is to consider along with all other mitigating and aggravating factors. (*People v. Tatum* (1989), 181 Ill. App. 3d 821, 537 N.E.2d 875.) When mitigation evidence is before the court, it is presumed that the sentencing judge considered the evidence, absent some indication, other

than the sentence imposed, to the contrary. (*People v. Danis* (1984), 129 Ill. App. 3d 664, 472 N.E.2d 1194.) A trial court may search anywhere, within reasonable bounds, for facts which tend to aggravate or mitigate the offense. Evidence of other offenses not resulting in a conviction can be considered by the trial court when determining a particular defendant's sentence, because the trial court is not strictly limited to consideration of only that information which would be admissible under the adversary circumstances of a trial. *People v. Neither* (1988), 166 Ill. App. 3d 896, 520 N.E.2d 1247.

■ There was no abuse of discretion by the trial court. The trial court explicitly stated it had read the presentence report and defendant's statement five or six times. The court also indicated it considered the evidence presented during the trial as well as that presented at the sentencing hearing, the arguments of counsel and, of course, the factors set forth in the statute.

The trial court considered probation as a sentence but found it would deprecate the seriousness of the offense. Accordingly, imprisonment would be necessary to protect the public. The court noted the defendant caused serious emotional harm to the victim. The court indicated prison was necessary to let others in a situation like defendant's know this type of behavior is unacceptable. Further, the testimony of the witnesses at the sentencing hearing indicated defendant had participated in other criminal conduct and possibly the physical abuse of women. The court believed this evidence indicated defendant was of such character and attitude to repeat his conduct on other young girls unless he was imprisoned for a time. Given the nature of the offense, the manner in which it was carried out and defendant's past behavior, the sentences imposed were not excessive. Defendant, a 35-year-old man, used his relationship with his girlfriend and the lure of alcohol and money to engage in sexual relations with a 14-year-old girl. Regardless of the fact that the victim's behavior may be characterized as resembling that of a woman older than her 14 years, society does not condone defendant's actions. Defendant's convictions must be affirmed.

Affirmed.

LUND, P.J., and SPITZ, J., concur.